OLGA L. TORRES RAMOS, demandante y recurrida, *v.* POLICÍA DE PUERTO RICO, demandada y peticionaria.

*Número:* CC-96-418 *Resuelto:* 30 de junio de 1997

---

[6] Declaraciones públicas del Ombudsman de 27 de junio de 1997.

*Edda Serrano Blasini, Subprocuradora General, Héctor Clemente Delgado* y *María Adaljisa Dávila Vélez, Procuradores Generales Auxiliares,* abogados del peticionario; *José Armando García,* abogado de la recurrida.

El Juez Asociado Señor Hernández Denton emitió la opinión del Tribunal.

¿Tiene una persona derecho a examinar el informe confidencial de la Policía de Puerto Rico que dio base al rechazo de su solicitud de empleo como guardia cadete de ese Cuerpo, cuando acude ante la Junta de Apelaciones del Sistema de Administración de Personal (en adelante la J.A.S.A.P.) a apelar esa decisión?

La Policía de Puerto Rico recurre de una sentencia del Tribunal de Circuito de Apelaciones que concluyó que Olga Torres Ramos tenía derecho a inspeccionar en cámara, durante el trámite apelativo ante la J.A.S.A.P., el informe que fue utilizado para rechazar su solicitud de empleo como guardia cadete. Por entender que la J.A.S.A.P. violó el derecho de Torres Ramos a un debido proceso de ley al negarle acceso al informe investigativo en esa etapa procesal, confirmamos la sentencia del Tribunal de Circuito de Apelaciones.

# I

Olga L. Torres Ramos solicitó empleo como guardia cadete de la Policía de Puerto Rico en octubre de 1995. Como parte del proceso de la evaluación de su solicitud y siguiendo el trámite administrativo prescrito para ello, la Policía realizó una investigación sobre su carácter, reputación, hábitos, conducta en la comunidad y otros aspectos pertinentes. Como resultado de esta investigación, la Policía de Puerto Rico concluyó que Torres Ramos no cumplía con los requisitos para ingresar al cuerpo policiaco, por lo que procedió a denegar su solicitud. Al notificarle esta determinación, la Policía, sin embargo, no le expresó las razones específicas que motivaron su rechazo.

Inconforme, Torres Ramos apeló la decisión ante la J.A.S.A.P. a tenor de lo dispuesto en la Sec. 7.14(2) de la Ley de Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. sec. 1394(2). Como parte del trámite de apelación, Torres Ramos solicitó conocer el contenido del informe que dio base a su rechazo. Éste, sin embargo, le fue denegado por el foro apelativo. A pesar de ello, la J.A.S.A.P. recibió y examinó fuera del expediente el informe confidencial y, a la luz de su contenido, desestimó la apelación. En su resolución, el foro apelativo administrativo señaló que la investigación confidencial examinada justificaba la acción porque existía "una percepción negativa sobre el carácter, hábitos y conducta observada por la apelante en la comunidad". Anejo IV, pág. 2. Posteriormente, declaró sin lugar la moción de reconsideración.

Oportunamente, Torres Ramos presentó una solicitud de revisión ante el Tribunal de Circuito de Apelaciones. En ella alegó que la J.A.S.A.P. no le brindó un debido proceso de ley al negarle acceso a los resultados de la investigación de la Policía y al desestimar su apelación sin la celebración de una vista.

Luego de analizar los hechos particulares del caso y la jurisprudencia aplicable, un panel del Tribunal de Circuito

de Apelaciones, Circuito Regional VI (Caguas/Humacao/ Guayama), integrado por los Honorables Jueces Brau Ramírez, Colón Birriel y Pesante Martínez, resolvió unánimemente que Torres Ramos tenía derecho a inspeccionar en cámara el contenido del informe que utilizó la Policía para rechazar su solicitud de empleo como guardia cadete. En consecuencia, revocó la resolución de la J.A.S.A.P. y le ordenó la devolución del caso a dicho tribunal administrativo para que continuara con los procedimientos de manera consecuente con lo resuelto.

De este dictamen, la Policía acude ante nos y alega como único error que Torres Ramos no tenía derecho a examinar el informe en cámara. Sostiene que este informe es confidencial a tenor de lo dispuesto en las Reglas 31 y 32 de Evidencia, 33 L.P.R.A. Ap. IV. Además, plantea que la divulgación y el acceso al informe es contrario a los intereses del Estado de mantener la seguridad de los informantes.

Debemos señalar que el Procurador General expone en su recurso que existe un conflicto sustancial entre decisiones previas de distintos paneles del Tribunal de Circuito de Apelaciones. Aunque un análisis de las sentencias de dicho foro apelativo revela que en todas se ha ordenado el acceso a la información custodiada por la Policía, la importancia pública de la controversia de autos requiere un pronunciamiento de este Tribunal que aclare el derecho aplicable en estos casos.[1] En vista de ello, y luego de contar con la comparecencia de las partes, resolvemos.

---

[1] Debemos destacar que el inciso (b)(1) de la Regla 18 del Reglamento del Tribunal Supremo dispone:

"... [C]uando el apelante plantee en su escrito de apelación la existencia de un conflicto sustancial entre decisiones previas del Tribunal de Circuito de Apelaciones, deberá incorporar a su escrito un resumen de los hechos y de los fundamentos de las decisiones que alega están en conflicto. Además, deberá establecer en forma clara y concisa la semejanza entre el caso apelado y el caso, o los casos, que alega están en conflicto; y especificar en qué consiste el mismo. También deberá incluir en el Apéndice de su escrito copia de las decisiones previas del Tribunal de Circuito de Apelaciones que alega están en conflicto." 4 L.P.R.A. Ap. XXI-A.

Por su parte, en el caso de autos el Procurador General sostiene que en el Tribunal de Circuito de Apelaciones "aparenta existir ... alguna confusión ... respecto a la validez legal de lo actuado por la Policía en lo que a la confidencialidad de los informes de investigación para evaluar solicitudes de ingreso se refiere". No obs-

## II

La Ley de Personal del Servicio Público de Puerto Rico establece el mérito como el principio rector del reclutamiento de todos los empleados públicos, incluyendo a los miembros de la Policía de Puerto Rico. Ley Núm. 5 de 14 de octubre de 1975 (3 L.P.R.A. sec. 1301 *et seq.*). De este modo, nuestro ordenamiento se asegura de "que sean los más aptos los que sirvan al Gobierno y que todo empleado sea seleccionado, adiestrado, ascendido y retenido en su empleo en consideración al mérito". 3 L.P.R.A. sec. 1311(1). Como derivado de este principio general, nuestro ordenamiento impone a las autoridades nominadoras la obligación de brindar a la ciudadanía la oportunidad de competir en igualdad de condiciones en la obtención de empleos en el sector público y de reclutar empleados "en atención al mérito sin discrimen por razones de raza, color, sexo, nacimiento, edad, origen, o condición social, ni por ideas políticas y religiosas". 3 L.P.R.A. sec. 1333. Véase *Díaz González v. Tribunal Superior*, 102 D.P.R. 195, 207 (1974).

Para garantizar el cumplimiento estricto con sus preceptos, la Ley de Personal del Servicio Público creó a la J.A.S.A.P. como entidad encargada de fiscalizar "rápi-

---

tante, los casos señalados por el Procurador General para sustentar esta alegación fueron decisiones emitidas por la extinta Unidad de Jueces de Apelaciones. Dichas decisiones son: *Camacho v. Policía de Puerto Rico*, Caso Civ. Núm. EAC-94-0349 (en el que se ordenó la inspección del informe), y *Borrero Quiñones v. Policía de Puerto Rico*, Civ. Núm. KAC 93-1338 (en el cual se denegó la inspección solicitada). El Procurador General, sin embargo, no hizo referencia a *Moctezuma v. Policía de P.R.*, Caso Núm. HAC 92-0310, una sentencia emitida también por la extinta Unidad y en la que se ordenó la inspección solicitada.

Por otro lado, tras una investigación, hemos encontrado que el Tribunal de Circuito de Apelaciones ha resuelto controversias análogas a la de autos en varios casos recientes y en todos ordenó el acceso al informe confidencial. Véanse: *Marrero Basso v. Policía de P.R.*, Caso Núm. KLRA-96-00322, consolidado con *Rodríguez Gauthier v. Policía de P.R.*, Caso Núm. KLRA-97-00025; *Velázquez Hernández v. Policía de P.R.*, Caso Núm. KLRA-96-00300; *Montañez Rivera v. Policía de P.R.*, Caso Núm. KLRA-96-00368; *Rivera Mariani v. Policía de P.R.*, Caso Núm. KLRA-96-00411; *Cruz Mercado v. Policía de P.R.*, Caso Núm. KLRA-96-00274.

Por otro lado, la Policía recurrió ante este Tribunal tanto en el caso de autos como en *Rivera Mariani v. Policía de P.R.*, Caso Núm. CC-97-243. En este último, el 14 de mayo de 1997 emitimos una Resolución mediante la cual concedimos un término a la parte recurrida para que compareciera y expresara su posición.

da y efectivamente las decisiones de los administradores individuales y la Oficina Central de Administración de Personal". *Díaz Marín v. Mun. de San Juan*, 117 D.P.R. 334, 338 (1986). Véase, además, *Aulet v. Depto. Servicios Sociales*, 129 D.P.R. 1 (1991). Por ello, y en vista de que el sistema de personal de nuestro país es integral, la ley concede jurisdicción apelativa a J.A.S.A.P. para revisar las decisiones de las agencias nominadoras, desde el reclutamiento hasta la retención o el despido, cuando se alegue una violación al principio del mérito. 3 L.P.R.A. sec. 1394. En específico, la ley otorga a quien se le rechace una solicitud de empleo en el sector público el derecho a apelar dicha determinación ante la J.A.S.A.P. Al respecto dispone:

> Con sujeción a las excepciones que se establecerán más adelante en este Capítulo, se podrá apelar de las acciones o decisiones de la Oficina Central, de los Administradores Individuales, y de las autoridades nominadoras, en los casos y por las personas que se especifican a continuación:
>
> . . . . . . . . .
>
> (2) Por un ciudadano, cuando alegue que una acción o decisión que le afecta viola su derecho a entrar en el Sistema de Administración de Personal en cumplimiento con el principio de mérito. 3 L.P.R.A. sec. 1394(2).

Surge con claridad del texto anterior que todo aspirante a un empleo público tiene un derecho conferido por ley a que su solicitud sea evaluada de acuerdo con el principio del mérito y a apelar ante la J.A.S.A.P. toda decisión de una agencia administrativa que entienda que sea contraria al ordenamiento vigente en materia de nombramientos, retención, ascensos y despidos de empleados públicos. En vista de que la Policía de Puerto Rico es una agencia incluida en el sistema de personal público, y según la Ley de Personal del Servicio Público de Puerto Rico está considerada como un Administrador Individual,(²) esta dis-

---

(²) La Policía de Puerto Rico es uno de los Administradores Individuales del sistema de personal del servicio público. Véase la Sec. 5.3 de la Ley de Personal del Servicio Público de Puerto Rico, según enmendada, 3 L.P.R.A. sec. 1343(5). Como tal, tiene la responsabilidad de dirigir todos los asuntos relacionados con la implantación del estatuto en dicha agencia y, en específico, de adoptar un reglamento que se atem-

posición claramente concede a los aspirantes a guardias cadetes un derecho apelativo cuando aleguen que se violó el principio del mérito al considerar sus solicitudes de empleo.

■ A la luz de la Ley de Personal del Servicio Público de Puerto Rico, para tener derecho a apelar ante la J.A.S.A.P. no es determinante que se tenga un "interés propietario" en el servicio público o que se demuestre la presencia de un "interés libertario". Tan sólo es necesario alegar que la decisión o actuación impugnada violó el principio del mérito.

■ . Por otro lado, aunque a la ciudadanía no le asiste un derecho al empleo público, una vez se ha legislado para enmarcar una solicitud de empleo público dentro del principio del mérito y se establece un procedimiento apelativo para garantizarlo, se ha reconocido un interés tutelado por las normas mínimas del debido proceso de ley. En los casos adecuados, estas garantías establecidas en nuestro ordenamiento jurídico permitirán que aquel solicitante que impugna su rechazo a un empleo en el servicio público pueda alegar y probar que la agencia en cuestión utilizó criterios ilegales o arbitrarios al considerar su nombramiento.

De forma cónsona con los preceptos de la Ley de Personal del Servicio Público de Puerto Rico, la Policía de Puerto Rico adoptó un reglamento de personal que recoge los elementos esenciales del principio de mérito. La Sec. 12.4 del Reglamento de Personal de la Policía de Puerto Rico de 4 de mayo de 1981, pág. 50, dispone que se podrá rechazar una solicitud de empleo por su presentación tardía, por no reunir los requisitos mínimos del puesto o por tener "conocimiento formal" de que los solicitantes:

---

pere a lo dispuesto por ley en aquellos aspectos esenciales al principio del mérito. 3 L.P.R.A. sec. 1347. Al amparo de este poder, la Policía de Puerto Rico aprobó su Reglamento de Personal de la Policía de Puerto Rico de 4 de mayo de 1981. Éste fue enmendado el 29 de octubre de 1993. Véanse: *Arroyo v. Policía de P.R.*, 143 D.P.R. 265 (1997); *Torres Arzola v. Policía de P.R.* 117 D.P.R. 204, 210 (1986).

(1) Estén física o mentalmente incapacitados para desempeñar las funciones del puesto;

(2) han incurrido en conducta deshonrosa;

(3) han sido convictos por delito grave o por cualquier delito que implique depravación moral;

(4) han sido destituidos del servicio público;

(5) son adictos al uso de sustancias controladas o uso habitual o excesivo de bebidas alcohólicas; o

(6) han realizado o intentado realizar engaño o fraude en la información sometida en la solicitud. Sec. 12.4(c) del Reglamento de Personal de la Policía de Puerto Rico, *supra*, pág. 51.

■ Esta sección reproduce las condiciones generales para el ingreso al servicio público establecidas en la Sec. 4.3(3) de la Ley de Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. sec. 1333(3). Ella, además, requiere que al rechazar una solicitud de empleo en la Policía se notifique por escrito a la persona rechazada las razones para su descualificación y su derecho a apelar ante la J.A.S.A.P. Sec. 12.4(3) del Reglamento de Personal de la Policía de Puerto Rico, *supra*. Según este esquema, corresponde a la persona que opta por ejercer su derecho a apelar una decisión adversa, demostrar que los fundamentos de su rechazo son contrarios al principio del mérito.

Queda claro, en consecuencia, que en el caso de autos la recurrida Torres Ramos tenía derecho a cuestionar la decisión de la Policía de Puerto Rico de haber denegado su solicitud de empleo y, por lo tanto, a que el foro apelativo administrativo determinara si al tomar esa decisión el cuerpo policiaco lesionó su derecho a que su solicitud fuese evaluada a la luz del principio de mérito que rige los procedimientos de nombramiento de personal en el servicio público.

### III

■ Como se sabe, la J.A.S.A.P., al igual que otros foros administrativos apelativos, posee facultades adjudicativas, específicamente en el ámbito de nombramiento, retención, ascensos y despidos de empleados públicos. Como

toda agencia con funciones adjudicativas, su función consiste en dilucidar controversias fácticas entre personas particulares y aplicar las normas y el derecho vigente a los hechos específicos del caso que determine como probados, para disponer el remedio apropiado.

■ Las funciones adjudicativas que realiza la J.A.S.A.P. deben, además, atemperarse a las disposiciones de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2101 *et seq.*) (en adelante L.P.A.U.). Esta ley fue promulgada con el claro propósito de establecer un procedimiento uniforme que aplique a todas las agencias del Gobierno y esté amparado en las normas mínimas que exige el debido proceso de ley. Por ello, requirió a las agencias de forma expresa "[c]onformar sus reglas o reglamentos que establezcan los procedimientos formales de reglamentación y adjudicación" a las disposiciones que contiene. 3 L.P.R.A. sec. 2105(b).

■ En el caso particular de J.A.S.A.P., esta agencia tiene el deber de cumplir con lo dispuesto en la L.P.A.U. para los procedimientos adjudicativos. 3 L.P.R.A. sec. 2151. Tales disposiciones pretenden brindarle a todo apelante una oportunidad de ser oído, de defenderse y de presentar su caso ante el foro administrativo en un proceso consecuente con las garantías que exige el debido proceso de ley. *López Vives v. Policía de P.R.*, 118 D.P.R. 219, 230 (1987). Véase, además, *Díaz Marín v. Mun. de San Juan*, supra. En virtud de lo anterior, en todo procedimiento adjudicativo formal, como el que lleva a cabo la J.A.S.A.P., la L.P.A.U. requiere que se salvaguarden los derechos a una notificación oportuna, a presentar evidencia y a una adjudicación imparcial.

Como parte esencial de este proceso, de ordinario hay que celebrar una vista pública ante un examinador imparcial. 3 L.P.R.A. sec. 1395(2). Dicho examinador está autorizado a emitir órdenes para la citación de testigos y para la producción de documentos, materiales u otros

objetos. De igual forma, está facultado para emitir "órdenes protectoras, conforme a las Reglas de Procedimiento Civil". 3.L.P.R.A. sec. 2158(b). Además, en la vista "ofrecerá a todas las partes la extensión necesaria para una divulgación completa de todos los hechos y cuestiones en discusión, la oportunidad de responder, presentar evidencia y argumentar, conducir contrainterrogatorio y someter evidencia en refutación". 3 L.P.R.A. sec. 2163(b).

Por último, la L.P.A.U. dispone que las decisiones que emite una agencia administrativa tienen que estar fundamentadas en el expediente, 3 L.P.R.A. sec. 2151, y las determinaciones de hechos de la agencia tienen que estar sostenidas por evidencia sustancial. 3 L.P.R.A. sec. 2175. Esta disposición recoge un principio básico de derecho administrativo que postula que al ejercer su poder adjudicativo, las agencias tienen que actuar a base de la totalidad de la prueba en el expediente y que, para adjudicar una controversia, no pueden considerar *ex parte* prueba desconocida por las partes. Una parte tiene derecho a saber cuál es la prueba que existe en su contra y a presentar toda la evidencia necesaria y admisible para sostener su reclamo y para refutar los planteamientos y argumentos de la parte adversa.

Si a base de un informe personal la agencia nominadora sostiene que un solicitante no cumple con los requisitos del puesto, la persona afectada tiene derecho a lograr el acceso a esta información para refutarla en el procedimiento apelativo específicamente establecido por ley. Su acceso en esta etapa significativa del proceso permite que el apelante pueda traer información para corregir los datos recopilados y le ofrece al Estado una oportunidad para rectificar la acción tomada. *López Vives v. Policía de P.R.*, supra.

En el caso particular de una apelación ante J.A.S.A.P. formulada por un aspirante a un puesto en el servicio público, sería muy difícil, sino imposible, poder cumplir con la disposición estatutaria que le impone al apelante la carga

de la prueba, si previamente no tiene acceso al informe que dio lugar al rechazo de su petición. Nótese que la comparecencia ante la J.A.S.A.P. es la última oportunidad dentro del ámbito administrativo que posee una persona afectada por una decisión de una agencia nominadora para conocer cuál es la prueba que ha sido esbozada en su contra y así poder defenderse oportunamente. Si se le niega acceso a la información que motivó el rechazo de su solicitud, sería prácticamente imposible para un solicitante ejercer adecuadamente su derecho apelativo ante la J.A.S.A.P. De igual forma, le sería sumamente difícil demostrar que al evaluar su solicitud se violó el principio del mérito o que la decisión estuvo motivada por razones políticas, religiosas, de sexo u otras análogas.

■ Este Tribunal de ordinario ha repudiado la práctica administrativa de adjudicar controversias a la luz de evidencia secreta que no puede ser conocida, explicada o rebatida por las partes. En *López v. Junta Planificación*, 80 D.P.R. 646, 670 (1958), por ejemplo, reafirmamos que "[e]l derecho a una vista no tendría sentido alguno si se permitiera [al tribunal administrativo] fundar su decisión en evidencia recibida sin el conocimiento de las partes y fuera de la audiencia, sin dar a las partes interesadas la oportunidad de rebatirla o explicarla mediante la repregunta o la presentación de otra evidencia en contrario". Véanse, además: *Escudero v. Junta Salario Mínimo*, 66 D.P.R. 600, 602 (1946); *Corporación Azucarera v. Junta Azucarera*, 77 D.P.R. 397, 410–411 (1954).

Recientemente, en *López y otros v. Asoc. de Taxis de Cayey*, 142 D.P.R. 109 (1996), reiteramos esta norma al anular una decisión de la Comisión de Servicio Público tomada a base de una prueba desconocida por las partes. Allí reprodujimos los comentarios siguientes del Prof. Demetrio Fernández en su conocida obra sobre derecho administrativo:

"El principio de exclusividad del récord constituye el obstáculo insuperable que impide que el examinador, juez administrativo

o la agencia tenga contactos o comunicaciones *ex-parte* que se tomen en consideración para rendir la decisión. Se diluye todo el sentido de justicia si una parte desconoce la evidencia que se ha usado en su contra. Es decir, si no se le concede a la parte la oportunidad de confrontarse con esa evidencia y de responder a ella, se le violan las garantías fundamentales. El proceso queda desprovisto mediante esa actuación de los derechos a presentar evidencia, a una adjudicación imparcial y a que su decisión se base en el récord o expediente. D. Fernández, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, Colombia, Ed. Forum, 1993, págs. 199–200". *López y otros v. Asoc. de Taxis de Cayey*, supra, pág. 114.

A tenor de este ordenamiento, la J.A.S.A.P. aprobó un reglamento procesal que permite el descubrimiento de prueba cuando una parte interesa que la otra parte le suministre información y/o documentación adicional relacionada con sus alegaciones. Art. 1.7 del Reglamento Procesal de la Junta de Apelaciones del Sistema de Administración de Personal de 9 de agosto de 1989. Este reglamento le impone a la J.A.S.A.P. el deber de que las resoluciones que emite sean "a base de la totalidad de la prueba" y le prohíbe admitir como evidencia prueba documental después de la celebración de una vista pública. Art. 1.15(b) del referido Reglamento. Como puede apreciarse, todas las apelaciones ante la J.A.S.A.P. tienen que seguir el mismo procedimiento de vista pública, independientemente de que sean solicitantes de empleo o empleados públicos.

Finalmente, en *López Vives v. Policía de P.R.*, supra, reconocimos que, al instar una apelación ante la J.A.S.A.P., un guardia cadete de la Policía tiene derecho a lograr el acceso al informe sobre su persona que constituyó el fundamento principal para su destitución. Como norma general, este mismo derecho también lo tiene una persona cuya solicitud de ingreso es rechazada. En ambos casos, su derecho de acceso al informe durante el proceso ante la J.A.S.A.P. está esencialmente fundamentado en las normas mínimas del debido proceso de ley y en el derecho que tiene un ciudadano de examinar la información que sobre él esté en manos del Estado, más aún cuando ésta da lugar

a una decisión como la del caso de autos. Resolver lo contrario implicaría violar el derecho apelativo que posee toda persona cuya solicitud de ingreso al servicio público es rechazada y el principio estatutario que postula que todo nombramiento sea efectuado a la luz del principio del mérito. Además, dicho derecho apelativo y el posterior proceso de revisión judicial no tendrían mucho sentido si parte del procedimiento adjudicativo administrativo se lleva a cabo en secreto y sin conocimiento de la parte afectada.

Por otro lado, tal acceso a la información en poder del Estado, que precisamente es obtenida como parte del proceso de evaluación de una solicitud de ingreso al sector público, en casos como el de autos, constituye un instrumento efectivo para la protección del derecho a la intimidad de las personas. Éste garantiza que toda persona tenga una oportunidad de verificar la información utilizada por el Gobierno al evaluar una solicitud de empleo público, de forma tal que pueda cuestionar y evitar actuaciones arbitrarias y discriminatorias en su contra. Véase la opinión concurrente de la Juez Asociada Señora Naveira de Rodón en *López Vives v. Policía de P.R.*, supra, pág. 238.

■ A pesar de lo anterior, en *López Vives v. Policía de P.R.*, supra, reconocimos que en ciertas circunstancias el Estado podría tener razones válidas para reclamar la confidencialidad de algunos informes. Sin embargo, cuando este reclamo se hace en los tribunales o en los foros apelativos administrativos como la J.A.S.A.P., corresponde al juzgador establecer un balance entre los distintos intereses en conflicto y diseñar un remedio que garantice el cumplimiento de las garantías que exige el debido proceso de ley. En este esquema, compete a los tribunales revisar cuidadosamente las determinaciones que al respecto toman los tribunales administrativos.

Aclarado lo anterior, examinemos si la alternativa prescrita por el Tribunal de Circuito de Apelaciones protege de

forma adecuada los intereses involucrados en el caso de autos.

## IV

En el caso de marras, la recurrida Olga Torres Ramos solicitó empleo como guardia cadete de la Policía de Puerto Rico. Su solicitud fue rechazada. Inconforme con esta decisión, apeló ante la J.A.S.A.P. y, en el trámite apelativo, solicitó acceso al informe que motivó su rechazo. El Estado, por su parte, reclamó su confidencialidad.

Así las cosas, la J.A.S.A.P. le ordenó a la Policía someter una copia de la investigación bajo la más estricta confidencialidad. Luego de examinar el informe y sin permitirle a la apelante tener acceso a la única prueba en su contra, la J.A.S.A.P. desestimó sumariamente la apelación. Concluyó al respecto que "[l]a investigación confidencial en autos demuestra que existe una percepción negativa sobre el carácter, hábitos y conducta observada por la apelante en su comunidad, siendo la información obtenida de tal naturaleza que justifica la acción aquí impugnada". Anejo IV, pág. 2.

Por su parte, el Tribunal de Circuito de Apelaciones revocó la decisión de la J.A.S.A.P. al concluir que "[e]l Estado no ha demostrado c[ó]mo el divulgar la información pone en riesgo los derechos de terceros, los intereses del gobierno o la seguridad pública" (Anejo I, pág. 8), y ordenó que se permitiera la inspección en cámara del informe. Coincidimos con el Tribunal de Circuito de Apelaciones.

En su recurso ante esta Curia, la Policía de Puerto Rico, representada por el Procurador General, sostiene que proveer acceso al informe es contrario a los intereses del Estado de mantener la confidencialidad de las fuentes de información. En síntesis, la Policía reitera los mismos argumentos para sostener su reclamo de confidencialidad que rechazamos en *López Vives v. Policía de P.R.*, supra.

Las coincidencias de ese caso y el de autos son evidentes. La decisión de expulsión en *López Vives v. Policía de P.R.*, supra, y la de rechazo de la solicitud en el caso de autos se fundamentaron en los hábitos y el carácter de las personas, según consignados en informes confidenciales preparados por la Policía. En ambos casos, el organismo administrativo tenía que adjudicar hechos a base de la prueba. Sin embargo, en los dos (2) casos la J.A.S.A.P. resolvió las apelaciones a base de una prueba secreta sobre el carácter del apelante sin permitirle a éste acceso a ella para poder sostener que la decisión violó el principio de mérito. Nótese, además, que en ambos casos los apelantes estaban ejerciendo un derecho apelativo expresamente concedido por la Ley de Personal del Servicio Público de Puerto Rico para garantizar que las decisiones de la Policía se tomaran a base del principio de mérito.

El Procurador General sostiene, además, que el Reglamento de Personal de la Policía requiere que se realice una investigación confidencial sobre el carácter, la reputación, los hábitos y la conducta de todos los aspirantes a guardia cadete. Además, señala que dicho reglamento expresamente establece que el expediente de la investigación será confidencial y que, en el caso de autos, Torres Ramos consintió a esta investigación. Su tesis parte de la premisa de que como el Reglamento de Personal de la Policía dispone que se practicará una investigación confidencial del carácter y la reputación de cada aspirante, esto implica que el solicitante renuncia a tener conocimiento de los resultados de esta investigación.

Aunque reconocemos que, considerando la naturaleza de la investigación realizada, es entendible que los resultados sean confidenciales, esto no significa que el solicitante no pueda tener acceso a ésta para poder ejercitar su derecho a apelar la decisión y demostrar que se discriminó en su contra o que se violó el principio de mérito. Precisamente, si la decisión está fundamentada en este informe, lo más probable es que su contenido permita evaluar si los criterios utilizados en la investigación son discriminatorios

o contrarios al espíritu de la Ley de Servicio Público de Puerto Rico.

Tampoco implica que, según la disposición reglamentaria en la cual se autoriza una investigación minuciosa de su conducta, el aspirante renuncie a su derecho constitucional a tener acceso a los hallazgos en un proceso apelativo en el que se cuestiona la decisión en su contra. Dicha información es fundamental para ejercer su derecho a apelación y su renuncia no es válida.

 Por otro lado, ciertamente el Estado tiene un interés legítimo en garantizar la confidencialidad de las fuentes de información de investigaciones efectuadas en el proceso de selección del personal. Conscientes de estos intereses, en *López Vives v. Policía de P.R.*, supra, resolvimos que el mecanismo correcto para dilucidar este reclamo es a través de las Reglas 31 y 32 de Evidencia, *supra*. Allí expresamos:

> Con estos propósitos el tribunal administrativo deberá examinar la propia naturaleza y contenido del documento, y el efecto de la divulgación sobre los intereses del Estado. También debe examinar cuál es la práctica de la agencia al recibir la información, quién tiene acceso a ellos y qué usos generalmente tienen estos documentos. Finalmente, hay que considerar las consecuencias de la divulgación sobre la vida privada y la seguridad de terceros. *La determinación de confidencialidad deberá ser confrontada con el interés público en la divulgación.* Corresponde inicialmente a los tribunales administrativos adoptar las medidas pertinentes para facilitar el acceso a los documentos tomando en consideración en cada caso los intereses públicos y privados. Por la importancia de los derechos envueltos, los tribunales tienen una obligación especial de ser particularmente cuidadosos en revisar estas determinaciones de los tribunales administrativos para proteger a los ciudadanos de decisiones arbitrarias y caprichosas que menoscaben el derecho constitucional al acceso a la información. (Énfasis suplido.) *López Vives v. Policía de P.R.*, supra, págs. 233–234.

De la norma expuesta anteriormente se desprende que ante el reclamo de Torres Ramos, la J.A.S.A.P. tenía que hacer inicialmente una determinación sobre la validez del planteamiento de confidencialidad del Estado mediante un

análisis integral de todas las circunstancias que rodean el informe en cuestión a la luz de lo dispuesto en las Reglas 31 y 32 de Evidencia, *supra*. Véase *Santiago v. Bobb y El Mundo, Inc.*, 117 D.P.R. 153, 159 (1986). En este sentido, antes de tomar la decisión de denegarle el acceso al informe de la Policía, la J.A.S.A.P. debió evaluar la naturaleza de la información que contenía y hacer un balance entre el interés gubernamental de proteger el proceso de selección de guardias cadetes y el perjuicio que denegarle acceso al informe pudiera ocasionar a la parte que lo solicita, en específico en cuanto al derecho que se le ha reconocido estatutariamente a que su solicitud de empleo en el servicio público sea evaluada a la luz del principio del mérito. Sin embargo, la J.A.S.A.P. acogió el planteamiento de confidencialidad del Estado sin esbozar las razones para ello.

No negamos que un informe de esta naturaleza pudiera tener información altamente sensitiva que pudiera ameritar ser custodiada con mucho celo y que podría razonablemente justificar la denegación de brindar acceso a ella, ya sea por la naturaleza de la información o por la identidad de las personas involucradas en la investigación. Sin embargo, compete al Estado esbozar las razones que demuestren que tal proceder es el más razonable. Esta es una evaluación que debe ser efectuada caso a caso a la luz de los intereses involucrados.

Luego de hacer un cuidadoso análisis de los intereses involucrados, compete a la J.A.S.A.P. determinar si los intereses son conciliables o si alguno tiene primacía, para entonces tomar aquellas medidas que mejor salvaguarden los intereses implicados. Por ejemplo, si la preocupación fundamental consiste en proteger la identidad de los informantes, a la luz de los resuelto en *López Vives v. Policía de P.R.*, supra, ese foro muy bien pudiera considerar la alternativa de dar acceso a la información sin revelar la fuente o excluir únicamente aquella parte del informe que por su contenido peculiar pueda razonablemente identificar al confidente. De esta manera, sin poner en peligro las fuen-

tes de información, en los casos apropiados se le ofrece a la parte apelante una oportunidad razonable de conocer los aspectos del carácter, la reputación, los hábitos y la conducta en la comunidad que han motivado su rechazo, a la vez que se le concede una oportunidad para presentar prueba para rebatir esa información.

En el caso de autos, sin embargo, la J.A.S.A.P. denegó la solicitud de acceso al informe presentada por Torres Ramos sin tan siquiera esbozar las razones para tal proceder en su resolución. Tampoco esbozó las razones planteadas por el Estado que justificaban la negación total del acceso a dicho informe.

Un examen independiente del informe confidencial preparado por la Policía de Puerto Rico nos ha convencido de que éste contiene información muy íntima sobre la conducta personal de Torres Ramos, la cual ella debe tener una oportunidad de refutar en su día.

El Estado, por su parte, no ha demostrado que proveer acceso limitado al expediente en el procedimiento apelativo ante la J.A.S.A.P. pone en riesgo los derechos de terceros, los intereses del Estado y la seguridad pública. Tampoco ha fundamentado su alegación de que la divulgación y el acceso a la información del modo provisto por el Tribunal de Circuito de Apelaciones atenta contra la seguridad de las personas que la brindaron. En vista de lo anterior, estimamos que a la luz de los intereses involucrados en el caso de autos, la alternativa de brindarle a Torres Ramos acceso en cámara al informe, sujeto a una orden protectora concilia adecuadamente los intereses de las partes. Dicha orden deberá asegurar que no se revele la fuente de información y se excluyan aquellas partes que por su contenido puede identificar al informante. De esta manera ella podrá enterarse de cuáles fueron las razones de su carácter, reputación, hábitos y conducta en la comunidad que fueron negativos y podrá presentar prueba para rebatir estos hallazgos sin que se revelen las fuentes de información.

No olvidemos que este acceso limitado al informe confiere al aspirante una oportunidad de corregir los datos

incluidos en él o de demostrar que en la investigación se incluyó información que el Estado no podía utilizar al evaluar una solicitud de empleo. En el peor de los casos, el rechazo de una persona como guardia cadete podría estar fundado en razones constitucionalmente impermisibles como ideas religiosas o políticas, entre otras. En tales situaciones, la parte agraviada sólo puede estar en condiciones de utilizar con efectividad los remedios que nuestro ordenamiento jurídico provee para vindicar la lesión a sus derechos, luego de tener acceso al contenido del informe. Este aspecto aumenta la importancia de permitirle algún tipo de acceso a este tipo de informe en ausencia de circunstancias especiales que aconsejen lo contrario.

Por los fundamentos antes expuestos, *se confirma la sentencia del Tribunal de Circuito de Apelaciones.*

*Se emitirá la sentencia correspondiente.*

Los Jueces Asociados Señores Rebollo López y Fuster Berlingeri concurrieron con el resultado sin opinión escrita.