El Juez Presidente Señor Hernández Denton
emitió la opinión del Tribunal.
La Asociación de Empleados del Estado Libre Asociado de Puerto Rico (Asociación) solicita la revisión de un dicta-men del Tribunal de Apelaciones que confirmó las determinaciones realizadas por la Comisionada de Seguros sobre alegadas violaciones al Código de Seguros relacionadas, en su mayoría, con la reducción del monto del beneficio del Seguro por Muerte Sobreseído. Por las razones que expondremos a continuación, revocamos el dictamen recurrido.
I
Desde 1921, la Asociación administra un Seguro por Muerte que estuvo fuera de la jurisdicción de la Oficina del Comisionado de Seguros hasta 1996. No obstante, a partir de esa fecha la Asociación quedó sujeta a la jurisdicción y a los poderes de la Oficina del Comisionado de Seguros en lo referente a sus negocios de seguros.
Actualmente, la Junta de Directores de la Asociación tiene la facultad de fijar —previa determinación actuarial— tanto las primas (cuotas) del seguro como los beneficios. Conforme a esa facultad, en 1970 la Junta de Directores estableció como monto del beneficio del Seguro por Muerte $15,500 y $9,500 para la primera y segunda categorías, respectivamente. Más tarde, se creó mediante legislación un Seguro por Años de Servicio y se desarrolló un fondo separado para éste.
*519 Ya que el fondo del Seguro por Muerte estaba atravesando momentos de insolvencia, el 1 de julio de 1989 la Asociación cerró el ingreso de nuevos asegurados a ese seguro. Este seguro se conoce desde entonces como Seguro por Muerte Sobreseído. Sin embargo, la entidad mantuvo el seguro para los socios que ya estaban cubiertos por él. Ante esto, la Asociación decidió mantener las primas del Seguro por Muerte Sobreseído en fondos separados de las primas de los otros seguros que ofrece la entidad. De esta forma, las primas de estos nuevos seguros no ingresan al fondo de reserva para pagar los beneficios del Seguro por Muerte Sobreseído si fuera necesario.
Basándose en este panorama, en 1993 la Asociación comenzó una campaña para exhortar a los asegurados bajo el Seguro por Muerte Sobreseído a cambiarse al nuevo programa. No obstante, de un total aproximado de 80,000 asegurados, sólo 11,500 optaron por cambiarse.
En 1995 la Oficina del Comisionado de Seguros le ex-plicó al personal de la Asociación que para aliviar la crisis del Seguro por Muerte Sobreseído no era posible reducir los beneficios de los asegurados ya acogidos a éste. No obstante, el 10 de noviembre de 1999 la Junta de Directores de la Asociación redujo los beneficios del Seguro por Muerte Sobreseído a $8,000, y $5,000 en la primera y segunda categorías, respectivamente, basándose en un estudio actuarial preparado por el consultor Juan B. Aponte. La Asociación también pospuso el pago de las reclamaciones presentadas entre julio y noviembre de 1999 para aplicarles los nuevos valores establecidos.
En diciembre de ese mismo año, la Asociación le notificó el cambio a la Oficina del Comisionado de Seguros y ésta, al responder la comunicación, reiteró su posición original de que la reducción no se podía aplicar retroactivamente; es decir, que las reclamaciones presentadas ese año fiscal se tenían que pagar según los valores vigentes al momento del contrato. La Asociación, sin embargo, alegó que la Oficina del Comisionado de Seguros no tenía jurisdicción para intervenir en el asunto.
*520 La reducción de los beneficios provocó la presentación de múltiples solicitudes de investigación ante la Oficina del Comisionado de Seguros. Los solicitantes pretendían que se les pagaran los beneficios a base de lo que se había pagado por más de treinta años, a saber, $15,500 en la primera categoría y $9,500 en la segunda. No obstante, esas solicitudes no llegaron a convertirse en querellas.
Posteriormente, en el 2003 la Oficina del Comisionado de Seguros emitió una Orden contra la Asociación. Le impuso una multa administrativa de $350,000 por violaciones al Código de Seguros, entre ellas, práctica injusta y engañosa por la reducción de los beneficios; falta de un contrato (póliza) que contenga los términos del acuerdo y los beneficios de los asegurados; reducción de los beneficios sin que se especificaran los términos y las condiciones del cambio en un contrato; divulgación de información engañosa; aplicación de diferencias injustas entre los asegurados; falta de información a los asegurados sobre la situación financiera del seguro, y no resolver las reclamaciones dentro de los noventa días que establece el Código de Seguros para ello.
En la Orden se le requirió a la Asociación restituir los beneficios del seguro a $15,500 y $9,500, lo cual —según la Asociación— implicaría un desembolso de más de $30 millones. Además, se le ordenó pagar todas las reclamaciones interpuestas con posterioridad al 1 de julio de 1999, a razón de $15,500 para los socios asegurados en primera categoría y $9,500 en segunda categoría, y presentar prueba sobre el cumplimiento con lo ordenado.
En junio de 2003, la Asociación solicitó el beneficio de una vista, que se celebró los días 27 y 28 de octubre de 2004, ante la presencia del oficial examinador Antonio Quiñones Rivera. Según se deduce de la transcripción de la vista, al inicio del proceso —y conociendo la práctica de la Comisionada de Seguros de no mostrar los informes de los oficiales examinadores— el representante legal de la Asociación le solicitó al oficial examinador que, una vez estuviera redactado, le mostrara el informe que recogía sus de *521 terminaciones de hecho. El oficial examinador contestó la solicitud; advirtió que el documento en cuestión es de uso interno y que es prerrogativa de la Comisionada de Seguros mostrarlo o no. Apéndice, págs. 842-843. Mediante mociones posteriores, la Asociación volvió a solicitar que se le diera acceso al informe del oficial examinador, mas sus intentos resultaron infructuosos. De hecho, el informe aludido nunca se puso a disposición de las partes ni formó parte del expediente administrativo.
Más adelante, la Comisionada de Seguros confirmó la Orden emitida por la Oficina del Comisionado de Seguros. Insatisfecha con el dictamen, la Asociación acudió en revisión ante el Tribunal de Apelaciones. Básicamente, alegó que la comisionada no tenía jurisdicción sobre el asunto; que la ausencia del informe del oficial examinador que presidió las vistas invalida la determinación administrativa, y que la Junta de Directores de la Asociación sí tiene facultad en ley para reducir el monto del Seguro por Muerte Sobreseído. El foro intermedio no acogió sus planteamientos y confirmó la determinación de la Comisionada de Seguros, pero redujo las multas impuestas a $50,000.
Inconforme aún, la Asociación acude ante nos y alega, en esencia, que erró el foro apelativo al confirmar la Resolución de la Comisionada de Seguros en ausencia del informe del oficial examinador. Aduce, además, que erró el Tribunal de Apelaciones al sostener que la Oficina del Comisionado de Seguros tiene jurisdicción sobre el Seguro por Muerte Sobreseído aun cuando está regido por otra ley y la Oficina del Comisionado de Seguros no ha promulgado reglamentación para atender sus particularidades. Finalmente, la Asociación alega que erró el foro apelativo al no mostrar deferencia ante la interpretación que hizo la Asociación de la Ley de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico, Ley Núm. 133 de 28 de junio de 1966 (3 L.P.R.A. sec. 862 et seq.), conforme a la cual la Junta de Directores de la Asociación tiene facultad en ley para variar el monto del Seguro por Muerte Sobreseído, previa determinación actuarial.
*522 Acogimos el recurso presentado como una solicitud de certiorari por tratarse del recurso adecuado. La Comisionada de Seguros ha presentado su alegato. Con el beneficio de la comparecencia de ambas partes, resolvemos.
II
Mediante su primer señalamiento, la Asociación alega que erró el foro apelativo al validar la determinación de la Comisionada de Seguros, aun cuando el informe del oficial examinador que presidió la vista no consta en el expediente administrativo. Aduce que la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.), Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. see. 2101 et seq.), así lo requiere y que, por lo tanto, se debe dejar sin efecto el dictamen en cuestión. Estamos de acuerdo.
La Sec. 3.13 de la L.P.A.U. dispone que “[l]a vista deberá grabarse o estenografiarse, y el funcionario que presida la misma preparará un informe para la consideración de la agencia, o emitirá la decisión por escrito si le ha sido delegada la autoridad para ello”. (Énfasis suplido.) 3 L.P.R.A. see. 2163. El lenguaje no discrecional empleado en la referida disposición demuestra que la L.P.A.U. requiere que se prepare un informe para que lo considere el jefe de agencia, secretario o director cuando quien preside las vistas no tiene la facultad para decidir.
Por otro lado, no cabe duda de que la L.P.A.U. requiere que ese informe se incluya en el expediente administrativo. Así surge de la Sec. 3.18, la cual dispone que
[e]i expediente incluirá, pero sin limitarse a:
(h) el memorando preparado por el funcionario que presidió la vista, junto con cualquier transcripción de todo o parte de la vista considerada antes de la disposición final del procedimiento, en aquellos casos en que el funcionario que presidió la *523 vista no tenga facultades de adjudicar. (Énfasis suplido.) 3 L.P.R.A. see. 2168.
Conforme a lo anterior, estamos impedidos de avalar la práctica de la Comisionada de Seguros de mantener como confidencial el informe del funcionario que escuchó a las partes y ponderó la prueba, so pretexto de que se trata de un “informe interno” —mejor llamado “borrador de resolución”— para beneficio de la adjudicadora.(1) Tampoco podemos endosar la pretensión de que se considere que la determinación administrativa corresponde íntegramente a la recomendación del oficial examinador. Todo ello contraviene las pautas claras establecidas en la L.P.A.U. y vulnera las garantías procesales reconocidas en los procesos adjudicativos ante las agencias administrativas.
A pesar de ello, la Comisionada de Seguros alega —entre otras cosas— que aun cuando falte el informe del oficial examinador en el expediente, esto no invalida la determinación administrativa porque en estos casos basta con que se le haga al adjudicador un informe oral o cualquier otro recuento mediante el cual se logre una decisión informada. La Comisionada de Seguros fundamenta su posición en ciertas expresiones incluidas en A.D.C.V.P. v. Tribunal Superior, 101 D.P.R. 875, 881 (1974), en particular, las siguientes:
En ausencia de requisitos específicos dispuestos por la Asamblea Legislativa, el debido proceso de ley en el trámite administrativo se cumple y satisface aun cuando no se transcriban las notas taquigráficas de la vista, ni se sometan determinaciones de hecho y conclusiones por los examinadores, ni hagan éstos un resumen o compendio escrito de la prueba para los comisionados, bastando en muchas ocasiones un informe oral de los examinadores a los miembros de la Junta o Comisión.
*524 Esta normativa no aplica a los hechos de este caso. Primero, el caso antes citado es anterior a las disposiciones de la L.P.A.U., las cuales entraron en vigor en febrero de 1989 y requieren, sin duda, que el informe del oficial examinador sea parte del expediente administrativo. Segundo, debemos tener presente que en ese caso la controversia no se centró en la ausencia del informe del oficial examinador en el expediente administrativo, sino en otro asunto que —en ese momento— aún era objeto de discusión, a saber, la bifurcación del proceso de decisión administrativa, donde un funcionario es quien recibe la prueba y otro es el que decide. En particular, en esa ocasión se señaló el riesgo de que el adjudicador no tomara una decisión informada, mientras que aquí se plantea el peligro de que se limite la revisión de ese dictamen.
Finalmente, para establecer la inaplicabilidad de esa normativa a los hechos de este caso, basta con enfatizar el inicio de la expresión en que la Comisionada de Seguros sustenta su negativa a incluir el informe del oficial examinador en el expediente administrativo. Nos referimos a la frase inicial donde se aclara que aquella norma prevalecerá siempre que la Asamblea Legislativa no disponga otra cosa.
Precisamente, con posterioridad a A.D.C.V.P. v. Tribunal Superior, supra, la Asamblea Legislativa incorporó a los procedimientos adjudicativos de las agencias administrativas unas garantías mínimas que tienen su origen en reconocidos principios del debido proceso de ley. Almonte et al. v. Brito, 156 D.P.R. 475 (2002); Mun. de Ponce v. J. P., 146 D.P.R. 650 (1998); Torres Ramos v. Policía de P.R., 143 D.P.R. 783 (1997); Magriz v. Empresas Nativas, 143 D.P.R. 63 (1997). Según esos principios, la See. 3.1 de la L.P.A.U., 3 L.P.R.A. sec. 2151, ordena, entre otras cosas, que toda decisión administrativa se base exclusivamente en el expediente. Específicamente, la disposición en cuestión establece que en todo procedimiento adjudicativo formal ante una agencia se salvaguardarán los derechos *525 siguientes: (a) notificación oportuna de los cargos; (b) derecho a presentar evidencia; (c) derecho a una adjudicación imparcial, y (d) derecho a que la decisión se base en el expediente. Id.
Dado que la decisión administrativa se tiene que basar en el expediente, y ya que la L.P.A.U. requiere que el informe del oficial examinador que presidió las vistas se haga formar parte de éste, no cabe duda que el incumplimiento de este requisito conlleva, a su vez, no fundamentar el dictamen en el expediente del caso. Esa normativa se apoya en el interés de que, al momento de hacer las determinaciones, la agencia se base exclusivamente en evidencia y materias oficialmente admitidas, en las materias de que se tomó conocimiento oficial, y en todo aquello que sucedió en la vista. Véase D. Fernández Quiñones, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed. rev., Bogotá, Ed. Forum, 2001, pág. 537. Dicha salvaguarda —en unión a las restantes pautas establecidas en la referida Sec. 3.1— constituye, además, un medio para asegurar que el organismo administrativo tendrá ante sí todos los elementos de juicio para emitir una decisión adecuada. Mun. de Ponce v. J.P., supra. Así se garantiza que el adjudicador ha ponderado todos los factores que pueden influir en su decisión, sobre todo aquellos que se relacionan con la evaluación de la prueba y las adjudicaciones de credibilidad. De esa forma, se le asegura al ciudadano que la agencia ha tomado en consideración toda la evidencia desfilada y que su participación en la vista fue realmente efectiva. Véase, en términos similares, Asoc. Fcias. Com. v. Depto. de Salud, 156 D.P.R. 105 (2002). Tal pauta es cónsona, a su vez, con el requisito de que las decisiones administrativas reflejen que el organismo ha considerado y resuelto los conflictos de prueba, y ha determinado los hechos probados así como los rechazados. Véanse: Mun. de San Juan v. J.C.A., 152 D.P.R. 673 (2000); Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., 144 D.P.R. 425 (1997).
*526 Por otra parte, no cabe duda que el deber de incluir el informe del oficial examinador en el expediente administrativo incide directamente sobre la revisión judicial.(2) En vista de que dicho requisito pretende salvaguardar el derecho a que la decisión administrativa se base en un expediente completo, lo que se afecta, en última instancia, es el derecho a la revisión judicial. Ello en vista de que “[l]a revisión judicial de la decisión administrativa se contrae y limita al récord o expediente del procedimiento adjudicativo”. Fernández Quiñones, op. cit, pág. 538. Si en el expediente administrativo no consta el documento que recoge la evaluación de la prueba hecha por el funcionario que presidió la vista, escuchó el testimonio de los testigos y observó su demeanor, queda trunca la posibilidad de refutar y cuestionar el dictamen administrativo y, por ende, se lesiona el derecho a que un tribunal apelativo revise su corrección. Por eso, hemos resuelto que
“[e]s sólo cuando la determinación administrativa se fundamenta en el expediente del caso que ha de ser resuelto que se garantiza a las partes la oportunidad de refutar la corrección del dictamen de la agencia y la posterior revisión judicial”. Magriz v. Empresas Nativas, supra, pág. 71.
En Asoc. Fcias. Com. v. Depto. de Salud, supra, nos expresamos en términos similares. Allí examinamos el efecto de varios incumplimientos del Departamento de Salud con los requisitos establecidos en la L.P.A.U. para el proceso de reglamentación. Uno de esos requisitos es un informe que prepara el funcionario que preside las vistas públicas y que debe constar en el expediente del proceso. Aun cuando se trataba de un proceso de reglamentación, expresamos que la ausencia de ese informe en el expediente correspondiente limita severamente nuestra facul *527 tad revisora. íd. Evidentemente, el rigor que se espera de los procedimientos adjudicativos es aún mayor.
De hecho, por la importancia que le reconocemos al informe del oficial examinador, desde antes que entraran en vigor las disposiciones de la L.P.A.U. habíamos resuelto que cuando la decisión del organismo administrativo es contraria e incompatible con dicho informe, nuestra función revisora debe tornarse más rigurosa. Henríquez v. Consejo Educación Superior, 120 D.P.R. 194 (1987). Si he-mos considerado que esos casos ameritan un examen más riguroso, ¿cómo ejercer ese examen más riguroso cuando ni siquiera existe el mencionado informe? El derecho a la revisión judicial precisa que el foro revisor conozca cabalmente la base del dictamen administrativo. Ese propósito, claramente, no se puede alcanzar si desconocemos la impresión y evaluación que hizo quien tuvo la oportunidad de ponderar la prueba y escuchar el testimonio de las partes. No podemos asegurarnos de que el adjudicador evaluó el informe del oficial examinador como se requiere, si no contamos con la posibilidad de estudiarlo durante el proceso de revisión.
Claramente, cuando avalamos la práctica de delegar en las agencias administrativas el poder de adjudicar controversias, partíamos de la premisa de que el ciudadano recibiría ciertas garantías. Dado que esas garantías mínimas están delimitadas en la L.P.A.U., no se puede decir que las agencias las desconocen y, por lo tanto, no existe razón para operar al margen de ellas. La alegación de la Comisionada de Seguros de que no se requería incluir el informe en el expediente administrativo porque la controversia es de derecho no nos convence. Establecer una norma caso a caso cuando el requisito de incluir el informe en el expediente administrativo consta expresamente en una ley, no se justifica. El cumplimiento de las leyes no constituye parte de la discreción que habitualmente le he-mos reconocido a las agencias administrativas.
*528 De todas formas, conviene aclarar que en este caso existen asuntos fácticos que son objeto de controversia y que ameritan determinaciones de credibilidad de las que carecemos ante la ausencia del informe del oficial examinador en el expediente administrativo. Así, por ejemplo, conforme surge del expediente, existe controversia en cuanto a la alegación de que la Asociación les hizo falsas representaciones a los asegurados bajo el Seguro por Muerte. De la misma forma, existe controversia en cuanto a la cantidad y calidad de la orientación que se les proveyó a los asegurados para propiciar que se cambiaran a los nuevos planes de seguros. Finalmente, existe controversia sobre la naturaleza del Seguro por Muerte, ya que la Oficina del Comisionado de Seguros alega que se trata de un seguro de vida entero, mientras que la Asociación alega que se trata de un seguro por derrama. Todos estos aspectos fueron objeto de evidencia testifical de cuyas apreciaciones no nos hemos podido beneficiar.
Según lo anterior, resolvemos que no incluir el informe del oficial examinador en el expediente administrativo cuando, como en este caso, dicho funcionario no tiene la facultad de adjudicar, constituye una violación a la L.P.A.U. que conlleva invalidar el dictamen administrativo. Ya hemos resuelto que cualquier determinación administrativa que se haya hecho de espaldas a las pautas mínimas establecidas en la citada Sec. 3.1 de la L.P.A.U. —entre las que se encuentra el derecho a que la decisión se base en el expediente— no puede prevalecer. Mun. de Ponce v. J.P., supra.
Como este primer señalamiento de la Asociación dis-pone del caso en su totalidad, no atenderemos los restantes señalamientos.
III
Por los fundamentos que anteceden, revocamos el dicta-men del Tribunal de Apelaciones y, en consecuencia, deja *529 mos sin efecto el dictamen emitido por la Comisionada de Seguros. Devolvemos el caso a la Oficina del Comisionado de Seguros para que se incluya en el expediente administrativo el informe del oficial examinador que presidió la vista administrativa. De no existir el informe, ordenamos que el funcionario que presidió la vista prepare el informe requerido y, tras evaluarlo según el resto del expediente, la Comisionada de Seguros emita el dictamen correspondiente. Si no es posible preparar dicho informe, entonces procede celebrar una nueva vista adjudicativa.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Fuster Berlingeri emitió una opinión concurrente.

 Ante unos hechos similares, donde la entidad adjudicativa se negó a proveer el informe del funcionario que presidió las vistas porque consideró que se trataba de un informe interno, el Tribunal Supremo de Estados Unidos calificó de anómala la práctica según la costumbre en el ámbito judicial y administrativo federal de descubrir los informes de los oficiales examinadores y de incluirlos en el expediente para beneficio de los foros apelativos. Ballard v. Commissioner, 544 U.S. 40 (2005).

 El Tribunal Supremo de Estados Unidos se expresó y sostuvo lo siguiente, a esos efectos, en Ballard v. Commissioner of Internal Revenue, supra, págs. 59-60:
“The Tax Court’s practice of not disclosing the special trial judge’s original report, and of obscuring the Tax Court judge’s mode of reviewing that report, impedes fully informed appellate review of the TaxCourt’s decision.” (Énfasis suplido.)