Cortés Trigo, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
El 19 de mayo de 2003, el Sr. Javier Díaz Pedrosa (Sr. Díaz) fue nombrado empleado temporero en el puesto de Administrador Servicios de Operaciones Aéreas de la Autoridad de Energía Eléctrica (Puesto) con un sueldo anual de $39,585.00. El 18 de noviembre de 2003, el Sr. Díaz prestó juramento y fidelidad de aceptación del Puesto. Antes de este nombramiento, el Sr. Díaz no había ocupado puesto de carrera alguno en la Autoridad de Energía Eléctrica (AEE).
El Puesto tiene la responsabilidad de la administración, dirección y supervisión de las operaciones aéreas de la AEE. Coordina los servicios de transportación aérea, así como prestación de servicios a otras agencias del gobierno. Es responsable de asesorar al Administrador de la División de Operaciones del Sistema Eléctrico. Además, asesora en aspectos de seguridad, protección y conservación de las unidades aéreas. 
Para ser nombrado en el Puesto se requiere que la persona tenga un grado de bachillerato de un colegio o universidad acreditada y ocho (8) años de experiencia en el funcionamiento, operación y mantenimiento de unidades aéreas. A la fecha de su nombramiento en el Puesto, el Sr. Díaz tenía un grado de Bachillerato en Ciencias Aeronáuticas de la Embry Riddle Aeronautical University de Prescott, Arizona, con una concentración mayor (“major”) en Aeronautical Science y una concentración menor (“minor”) en Aviation Safety.
Al 19 de mayo de 2003, el Puesto estaba incluido en el servicio de confianza. Conforme la comunicación del 16 de mayo de 2003 del Sr. Wilfredo Pantojas, Director de Servicios Administrativos de la AEE, se le advirtió al Sr. Díaz al nombrarlo lo siguiente: “Esta plaza es de libre remoción y de permanecer en la misma estará sujeto a la voluntad de la autoridad nominadora.” El Sr. Díaz acreditó con su firma lo siguiente: “Yo, Javier O. Díaz Pedrosa, leí el presente documento y acepto la plaza de Administrador de Servicios de Operaciones Aéreas dentro del servicio de confianza. Tomé esta decisión de una manera libre, inteligente y sin coacción alguna”.
Bajo el nuevo Plan de Clasificación y Retribución de la AEE, implantado el 2 de enero de 2005, se asignó al Puesto una retribución de $57,720.00 anuales.
*950 El Sr. Díaz ocupó el Puesto desde el 19 de mayo de 2003 hasta el 30 de julio de 2006. Durante ese tiempo, el Sr. Díaz realizó las labores del Puesto en forma eficiente. Además, tenía la preparación académica y experiencia que requería el Puesto y era piloto comercial.
El 1 de agosto de 2006 se notificó al Sr. Díaz una carta firmada por el Ing. Edwin Rivera Serrano, entonces Director Ejecutivo de la AEE, relevándolo del Puesto, efectivo el 30 de julio de 2006, y asignándolo a la plaza de Supervisor de Almacén, Clasificación G-l, en el Almacén Núm. 13, Área de Monacillos con el salario mínimo correspondiente a dicha clasificación, $34,359.00. Esta plaza solamente requiere una preparación de Grado Asociado. 
Insatisfecho con su reubicación, el 16 de agosto de 2006, el Sr. Díaz presentó una querella al amparo del Procedimiento de Querellas para Empleados de Carrera no Unionados contra la AEE. Solicitó que se: reevaluara la acción de personal tomada y le reubicara en un puesto conforme su preparación y experiencia que no conllevara una reducción drástica en su salario; reclasificara el Puesto como de carrera; le pagaran las vacaciones conforme el sueldo que devengaba en la Plaza; e investigara la razón de su despido.
Se designó un Oficial Examinador para resolver la querella del Sr. Díaz. Las partes sometieron la controversia mediante memorandos y el expediente de personal del Sr. Díaz.
El Oficial Examinador determinó, mediante la decisión recurrida, denegar todas las reclamaciones del Sr. Díaz, excepto que ordenó prospectivamente su reubicación a una plaza regular condicional conforme su preparación académica y experiencia, esto es, un puesto que tuviera como requisito mínimo tener bachillerato. Inconformes, ambas partes recurrieron ante nos y consolidamos los recursos de revisión.
El Sr. Díaz aduce que se cometieron los siguientes errores:

“1- Erró el Oficial Examinador al concluir erróneamente que el recurrente [no creó] una expectativa de permanencia en la relación de empleo.

2- Erró el Oficial Examinador al determinar que el ajuste de sueldo a que tiene derecho el recurrente es de carácter prospectivo. ”

Por su parte, la AEE señala los siguientes errores:

“1- El Oficial Examinador se excedió en su jurisdicción y emitió una determinación contrario a derecho al determinar que el querellante debió ser reubicado en un puesto regular condicional, el cual requiera similar preparación académica y experiencia al que ocupaba como servicio de confianza, cuando el Reglamento de Personal sólo dispone que se reubique en un puesto para el cual cualifique. Que al interpretar el Reglamento como lo hizo, concedió unos derechos a los empleados no establecidos en el mismo.

2. Erró el Oficial Examinador al determinar que la intención de la Autoridad cuando redactó el Reglamento de Personal y dispuso “para un puesto que cualifiquen”, quiso decir para un puesto de similar preparación académica y experiencia. Esto no fue parte de la prueba presentada por las partes y no está fundamentada en el récord. ”

Ambas partes presentaron sus alegatos en oposición al recurso presentado por la otra parte. Resolvemos.
II
La facultad revisora de los tribunales de las decisiones emitidas por una agencia administrativas incluye las siguientes áreas: (1) concesión del remedio apropiado; (2) revisión de las determinaciones de hechos conforme *951 al criterio de evidencia sustancial; y (3) revisión de las conclusiones de derecho en su totalidad. T-JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70, 80-81 (1999); Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 129 (1998); D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da. Ed., Bogotá, Forum, 2001, pág. 534.
La función revisora del tribunal, aunque restringida, tiene como propósito fundamental delimitar la discreción de los organismos administrativos y velar porque sus actuaciones sean conformes a la ley y estén dentro del marco del poder delegado. Misión Ind. P.R. v. J.P., 146 D.P.R., a la pág. 129.
Este ejercicio por parte del tribunal está enmarcado en dos principios fundamentales que postula la Ley Núm. 170 de 12 de agosto de 1988, según 'enmendada, conocida como Ley de Procedimiento Administrativo Uniforme (LPAU), 3 L.P.R.A. sec. 2101 y ss. “Las determinaciones de hechos de las decision'es de las agencias serán sostenidas'por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.” 3 L.P.R.A. see. 2175. Sin embargo, “[l]as conclusiones de derecho serán revisadas en todos sus aspectos por el tribunal. ” Id. Es, por tanto, indispensable que la agencia realice determinaciones de hechos y conclusiones de derecho que puedan proporcionar a los tribunales la base en la que descansó la decisión del organismo administrativo. De esta forma, los tribunales estarán en posición de descargar su función revisora responsablemente.
El criterio rector en la revisión judicial de una determinación de hechos de una agencia es la existencia de evidencia sustancial. A estos fines, se ha definido evidencia sustancial como “aquella [evidencia] pertinente que “una mente razonable pueda aceptar como adecuada para sostener una conclusión”. Ramírez v. Depto. de Salud, 147 D.P.R. 901, 905 (1999). De ordinario, los tribunales no intervendrán en las determinaciones de hechos de las agencias, mientras exista evidencia sustancial en apoyo de las mismas. Pacheco v. Estancias, 160 D.P.R. 409, 432 (2003). Dicho análisis requiere que la evidencia sea considerada en su totalidad; esto es, tanto la que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido. Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., 144 D.P.R. 425, 437 (1997). Esta norma persigue evitar que los tribunales sustituyan el criterio de la agencia en asuntos enmarcados en su destreza y especialización por el criterio del tribunal revisor.
Para sostener la posición de que no existe evidencia sustancial que apoye las determinaciones de la agencia administrativa, la parte afectada debe demostrar que existe “otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la totalidad de la prueba presentada... y hasta el punto que se demuestre claramente que la decisión [de la agencia] ...no está justificada por una evaluación justa del peso de la prueba.” Hilton Hotels v. Junta Salario Mínimo, 74 D.P.R. 670, 686 (1953). La prueba ofrecida deberá desfavorecer la presunción de que la determinación del organismo administrativo se desprende de la. totalidad de la prueba que éste tuvo ante su’ consideración. Véase, Ramírez v. Deptò. de Salud, 147 D.P.R., a las págs. 905-906.
En cuanto a las determinaciones de derecho de la agencia, el tribunal podrá revisarlas en todos sus aspectos, aunque observando un nivel de deferencia por el criterio de la agencia en aquella legislación que ésta implante. Véase, Rebollo v. Yiyi Motors, 161 D.P.R. 69, 77 (2004); P.R.T.C. v. J. Reg. Tel. de P.R., 151 D.P.R. 269 (2000). Esta norma no presupone que el tribunal revisor pueda descartar libremente las interpretaciones o conclusiones de la agencia administrativa, sino que les dará deferencia en la medida que éstas sean razonables. Misión Ind. P.R. v. J.P., 146 D.P.R., a la pág. 132. Por tanto, el tribunal revisor sostendrá las conclusiones de la agencia mientras las mismas sean cónsonas con el propósito legislativo y no sean arbitrarias, ilegales o irrazonables. Id.; T-JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R._, a la pág. 80.
Sin embargo, la interpretación que realiza la agencia administrativa no puede prevalecer cuando afecta *952 derechos fundamentales, es irrazonable o lleva a que se cometa una injusticia. Costa, Piovanetti v. Caguas Expressway, 149 D.P.R. 881, 889 (1999). Tampoco merece deferencia la interpretación de la agencia cuando produce un resultado inconsistente o contrario al propósito de la ley o reglamento interpretado. Calderón v. Adm. Sistemas de Retiro, 129 D.P.R. 1020, 1042 (1992).
ni
Discutimos en primer lugar los señalamientos del Sr. Díaz. En el primero de éstos alega, en síntesis, que originalmente fue nombrado de manera temporal en el Puesto y, luego de ser evaluado favorablemente, se le nombró de forma permanente. Sostiene que se creó una expectativa de continuidad en el Puesto a base de las circunstancias en las cuales fue nombrado. No tiene razón.
Es norma establecida que un empleado público tiene un reconocido interés en la retención de su empleo, si dicho interés está protegido por la ley o cuando las circunstancias crean una expectativa de continuidad en el mismo, que forma parte de su derecho de propiedad y de la cual no puede ser privado sin que medie el debido proceso de ley. Orta v. Padilla Ayala 131 D.P.R. 227, 241 (1992); Lupiañez v. Srio. de Educación, 105 D.P.R. 696, 700 (1977).
Según surge del expediente, al ser nombrado el Sr. Díaz en el Puesto, esta plaza estaba clasificada como de confianza. En ese momento se le advirtió a éste que dicha plaza era de libre remoción y de permanecer en la misma estaría sujeto a la voluntad de la autoridad nominadora. Y él acreditó al aceptar con su firma que había leído el documento y aceptaba el Puesto como uno dentro del servicio de confianza.
Evidentemente, el Sr. Díaz no tenía una expectativa legítima de retener el Puesto, ya que dicha plaza no estaba clasificada como de carrera cuando se le nombró. Al ocupar un puesto de confianza, el empleado no tiene un interés propietario protegido constitucionalmente y el patrono puede separarlo de su puesto a su entera discreción. Morales Narváez v. Gobernador, 112 D.P.R. 761, 766 (1982). La mera expectativa de que será reclasificado a una plaza de carrera sin actos por parte de la agencia que inequivocamente evidencien dicho nombramiento no le confiere al recurrente algo más que una expectativa unilateral. Depto. de Recursos Naturales v. Correa, 118 D.P.R. 689, 699 (1987). Asimismo, el mero hecho de ocupar una posición por un prolongado período de tiempo tampoco crea un interés propietario cuando se acepta un puesto de confianza. Morales Narváez v. Gobernador, 112 D.P.R._, a la pág. 767.
Conforme el Artículo 11.4.8 del Reglamento de Personal para los Empleados de Carrera No Unionados, Reglamento Núm. 2386 de 21 de julio de 1992 (Reglamento), “[c]uando un empleado regular de confianza no haya ocupado un puesto en el servicio de carrera y cese en su puesto de confianza, tenga mas de dos (2) años de servicio, le será otorgado un nombramiento regular condicional para la plaza o funciones que cualifique. ” En el presente caso, al amparo de dicho articulado, la AEE reubicó al Sr. Díaz a un puesto de carrera, por lo que le concedió el derecho al que éste tenía.
En segundo lugar, el Sr. Díaz argumenta que conforme el Manual de Procedimientos Administrativos de la AEE se le debió asignar un sueldo correspondiente a su experiencia y preparación. A estos fines cita que la Sección 143.3 (E) del Manual dispone:

“Cuando se reemplee una persona que haya servido en la Autoridad y cuya separación de la agencia no fue motivada por razones disciplinarias, el Administrador General de la Oficina de Personal le podrá asignar un Salario que corresponda a su experiencia y capacidad-para desempeñarse en el puesto que va a ocupar. ”

El Sr. Díaz aduce que conforme esta disposición se le debió asignar un sueldo conforme su experiencia y capacidad. No tiene razón. Del texto de la referida disposición surge claramente que ésta aplica a empleados separados de la AEE que son reempleados y aquí el Sr. Díaz nunca fue separado de la agencia y reempleado por *953 la AEE. De hecho, la Sección 112.1 del Manual se refiere a “reempleo” como cuando la AEE reemplea a exempleados pensionados y no pensionados y el Sr. Díaz no era un exempleado pensionado o no pensionado al ser reubicado en la plaza de Supervisor de Almacén. Por lo tanto, no aplica esta disposición.
Además, el Sr. Díaz cita que la Sección 143.4 del Manual establece:

“Cuando se otorga un nombramiento regular condicional, el empleado mantiene el sueldo que tenía como empleado gerencial temporero. A partir de esa fecha se integra al Sistema de Valoración por desempeño y sus aumentos de sueldo están sujetos al mismo. ”

Conforme esta disposición, el Sr. Díaz alega que al ser reubicado en un nombramiento regular condicional se le debió asignar el salario que tenía en el Puesto. Tampoco tiene razón. Esta sección se refiere a los empleados gerenciales temporeros a los cuales se otorga un nombramiento regular condicional. Según la Sección 4.1.3 del Reglamento los empleados gerenciales temporeros son empleados de carrera y “[s]on empleados con los mismos deberes y características del grupo de los empleados de carrera y realizan funciones gerenciales con nombramiento por término fijo que no podrá exceder de un (1) año. ” En este caso, al ser reubicado en la plaza de Supervisor de Almacén, el Sr. Díaz no ocupaba el Puesto como un empleado temporero gerencial, sino como un empleado regular de confianza. Por lo tanto, no le aplica la citada Sección 143.4 del Manual.
Por su parte, la AEE sostiene en su recurso que la conclusión del Oficial Examinador, de que la frase “plaza o funciones que cualifique” usada en el Art. 11.4 (8) del Reglamento, significa que se reubique al empleado en un puesto regular condicional que requiera similar preparación académica y experiencia que la del empleado, es equivocada. Alega que la interpretación correcta de esta disposición es que el empleado sea nombrado en una plaza a la cual cualifique porque cumple con la preparación mínima requerida. Aduce que esa es la interpretación de su Oficina de Personal que merece deferencia y, de aceptarse lo resuelto por el Oficial Examinador, le obligaría a crear plazas para las cuales no tiene necesidad. Resolvemos.
La Ley de Personal del Servicio Público, Ley Núm. 5 de 17 de octubre de 1975 (Ley 5), rigió los asuntos de personal en el gobierno hasta el 2004 cuando se aprobó la Ley para la Administración de los Recursos Humanos del Servicio Público, Ley Núm. 184 de 3 de agosto de 2004 (Ley 184), 3 L.P.R.A. sees. 1461 y ss. En la Ley 5 se estableció el mérito como el principio rector del reclutamiento de los empleados públicos. Sec. 2.1 de la Ley 5; Torres Ramos v. Policía de P.R., 143 D.P.R. 783, 790 (1997).
Este principio fue reafirmado en la Sec. 2.1 de la Ley 184, 3 L.P.R.A. see. 1461 (Propósito), al indicarse “que sean los más aptos los que sirvan al Gobierno y que todo empleado sea seleccionado, adiestrado, ascendido y retenido en su empleo en consideración al mérito y capacidad. ” Aun cuando el principio de mérito no es de rango constitucional, sino de génesis estatutaria, éste rige en todo el servicio público, incluyendo en las corporaciones públicas. Vázquez v. Banco Desarrollo, 171 D.P.R._(2007), 2007 JTS 91, págs. 1313-1314; Torres Ponce v. Jiménez, 113 D.P.R. 58, 69-70 (1982); Reyes Coreano v. Director Ejecutivo, 110 D.P.R. 40, 48 (1980).
Ciertamente, la interpretación de la agencia de su reglamento merece nuestra deferencia. No obstante, no podemos convalidar una actuación administrativa que sea inconsistente al principio del mérito de seleccionar a los empleados públicos en consideración a sus méritos y capacidades. Calderón v. Adm. Sistemas de Retiro, 129 D.P.R._, a la pág. 1042. Por lo tanto, entendemos que fue correcta la decisión del Oficial Examinador de que el Sr. Díaz debía ser nombrado en un puesto que esté conforme a su preparación y experiencia.
Sin embargo, consideramos correcto lo planteado por la AEE en el sentido de que esta interpretación no puede conllevar que tenga que crear una plaza cuando tiene que reubicar a un empleado en las circunstancias *954 como la del Sr. Díaz. Por ende, resolvemos que en las situaciones contempladas por el Art. 11.4 (8) del Reglamento, la AEE deberá nombrar al empleado en un puesto que esté conforme a su preparación y experiencia que esté vacante al momento del nombramiento. Y de no estar conforme el empleado con el puesto en el cual es nombrado, corresponde a éste probar que existe otro puesto vacante que requiere similar preparación y experiencia a la suya. Por lo tanto, procede modificar la decisión recurrida conforme lo aquí indicado.
IV
Por los fundamentos expuestos, se modifica la decisión recurrida. Se devuelve el caso al foro administrativo para que celebre una vista y determine a cuál plaza vacante existente que sea conforme a la preparación académica y experiencia del Sr. Díaz, éste debe ser reubicado.
Notifíquese.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Leda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2008 DTA 35
1. La Naturaleza y Aspectos Distintivos del Trabajo del Puesto es la siguiente:

“Este es un trabajo administrativo que comprende responsabilidad por la administración, dirección y supervisión de las operaciones aéreas. Supervisa empleados con funciones administrativas en actividades relacionadas con la planificación, coordinación y administración de los servicios de transportación aérea en la Autoridad, así como la prestación de servicios a otras agencias de gobierno y entidades privadas. Es responsable además, de asesorar al Administrador de la División de Operación del Sistema Eléctrico sobre la adquisición, disposición, programa de mantenimiento de equipos y unidades de transportación aérea. Realiza sus funciones bajo supervisión general y ejerce un alto grado de discreción y juicio independiente. El trabajo se evalúa a través de informes sometidos al supervisor. ”

2. Para el 23 de julio de 2000, el puesto de Administrador Operaciones Aéreas de la AEE estaba clasificado en la categoría de carrera. El 17 de abril de 2003, la AEE enmendó la clase cambiando el título a Administrador Servicios de Operaciones Aéreas y cambió la categoría de dicho puesto a uno de confianza con Escala Salarial E-III.
3. La descripción de la clase de Supervisor de Almacén es la siguiente:

“Coordina y supervisa el trabajo operacional y de apoyo de menor complejidad y alcance relacionado con las actividades de almacenaje y despacho de materiales y equipo de un almacén en el Directorado de Servicios Administrativos. Asegura el cumplimiento de metas y cuando surgen obstáculos toma medidas para minimizar las interrupciones. Verifica la exactitud y corrección de los trabajos asignados para garantizar los resultados esperados en el nivel óptimo de calidad y eficiencia.

Trabajar bajo la supervisión definida de un supervisor de nivel superior y ejerce algún grado de libertad, juicio y criterio propio para desarrollar sus secuencias de trabajo y en situaciones nuevas o fuera de alcance consulta con el supervisor para la aprobación y decisión.

Establece contactos y relaciones oficiales con supervisores para orientar, dar seguimiento y coordinar esfuerzos dirigidos al logro de los objetivos establecidos.

El trabajo se evalúa mediante los resultados obtenidos.

Supervisa directamente al personal de oficina bajo la unidad apropiada. ”