El Juez Asociado Señor Rivera García
emitió la opinión del Tribunal.
Este recurso nos brinda la oportunidad de expresarnos una vez más en cuanto al requisito de legitimación activa necesario para poder presentar un recurso de revisión judicial. Particularmente, nos corresponde justipreciar si los criterios que a esos efectos establecimos en Fund. Surfrider y otros v. A.R.Pe., 178 DPR 563 (2010), deben funcionar de igual manera cuando se solicita la revisión de una resolución de la Junta de Calidad Ambiental en la que se aprobó una Declaración de Impacto Ambiental. Esto, ante el hecho de que conforme a la Ley de Procedimiento Administrativo Uniforme, infra, el trámite de evaluación de documentos ambientales no es un procedimiento adjudicativo formal. Examinada la controversia, resolvemos afirmativamente y adelantamos que revocamos la sentencia apelada.
I
La presente controversia se origina ante una propuesta que hicieran los municipios de Aguada y Aguadilla (los peticionarios) para el desarrollo de un complejo hotelero, residencial y marítimo. El proyecto, denominado Discovery Bay Resort & Marina, consta del desarrollo de 144 cuerdas de terreno y se ubicaría entre la comunidad Espinar del municipio de Aguada, las urbanizaciones García y Victoria, y el complejo residencial Aponte de Aguadilla.(1) Este consiste en la construcción de dos diques para el control de inundaciones, un embalse, un canal de navegación, una marina con capacidad para mil embarcaciones, un componente hotelero, unidades de vivienda y espacio comercial, entre otros usos.(2) Según descrito, ese proyecto tiene el propósito de proteger de las inundaciones a más de tres mil *127 doscientas personas y desarrollar el área como un destino turístico clave para la propuesta de Porta del Sol.(3)
Así las cosas, el 20 de diciembre de 2007, los peticionarios presentaron ante la Junta de Calidad Ambiental (JCA) la correspondiente Declaración de Impacto Ambiental Preliminar (DIA-P).(4) Tras presentarse ese documento, el 4 de febrero de 2008, el Sr. Jorge R. Sepúlveda Torres, en representación del Comité Ciudadanos Aguadeños Pro Conservación del Ambiente, Inc. (CAPCA), solicitó ante la agencia intervenir en los procedimientos relacionados con la evaluación del proyecto y que se realizaran vistas públicas.(5) Evaluada su solicitud, la JCA concedió la celebración de la vista pero denegó la intervención. Indicó que conforme al Reglamento de la Junta de Calidad Ambiental para la Presentación, Evaluación y Trámite de Documentos Ambientales, Reglamento Núm. 6510 de 22 de agosto de 2002, de esa agencia,(6) los procedimientos de evaluación de docu-mentos ambientales no son procedimientos adjudicativos, por lo que no existe el derecho a intervenir.(7) Así, la JCA celebró una vista pública el 2 de mayo de 2008 en la que los recurridos presentaron sus ponencias orales y escritas respecto a la DIA-P.(8)
Culminado ese proceso, el 27 de agosto de 2009 la JCA emitió la Resolución Interlocutoria Núm. R-09-26-1, me- *128 diante la cual aprobó la DIA-P y le ordenó a los peticiona-rios que en el término de un año presentaran una Declara-ción de Impacto Ambiental Final (DIA-F).(9)
En cumplimiento con lo ordenado, el 19 de enero de 2010 los municipios proponentes presentaron ante la JCA la DIA-F.(10) Luego de los trámites de rigor, el Área de Ase-soramiento Científico de la JCA la evaluó,(11) y el 14 de mayo de 2010 la agencia aprobó ese documento mediante Resolución y Notificación Final por considerar que cumplía con los requisitos establecidos en la Ley de Política Pública Ambiental de 2004, Ley Núm. 416-2004 (12 LPRA see. 8001 et seq.).(12)
Inconforme con ello, el 14 de junio de 2010, el Sr. Gil A. Morales, la Sra. Ramonita Méndez Méndez, la Sra. Ada Torres y el Sr. Jorge Sepúlveda, por sí y en representación de CAPCA (los recurridos), presentaron una moción de re-consideración ante la JCA.(13) En síntesis, alegaron que la DIA-F no evaluó todas las alternativas a la acción pro-puesta, no contestó los comentarios y cuestionamientos del público y de las agencias comentadoras, y no analizó adecuadamente los impactos ambientales significativos del proyecto. Atendida la moción, la agencia se reafirmó en lo previamente dictaminado.(14)
No contestes con esa determinación, el 13 de octubre de 2010 los recurridos acudieron al Tribunal de Apelaciones mediante un recurso de revisión judicial.(15) En esencia, esbozaron argumentos similares a los que consignaron *129 ante la agencia en su moción de reconsideración. Tanto la JCA como los municipios proponentes presentaron su oposición.(16) Además, la JCA presentó una moción para in-formar sobre una sentencia que emitió ese foro, en la que se desestimó un recurso de revisión judicial por falta de jurisdicción porque la parte recurrente no fue parte inter-ventora en el procedimiento administrativo que lo motivó. (17)
Atendido el recurso, el foro apelativo intermedio revocó parcialmente mediante Sentencia de 23 de marzo de 2012 la Resolución emitida por la JCA que aprobó la DIA-F. Determinó que los municipios proponentes debían ampliar la evaluación de ciertos elementos descritos en la Sentencia. (18) En cuanto al planteamiento jurisdiccional, resol-vió que los recurridos tenían legitimación activa para pre-sentar el recurso de revisión. (19) Sostuvo que como la evaluación de documentos ambientales es un procedimiento informal no adjudicativo, era improcedente que los recurridos presentaran una solicitud de intervención ante la agencia como requisito para poder presentarlo. De otra parte, concluyó que los recurridos tenían legitimación activa para presentar ese recurso “por los daños concretos y reales que pueden sufrir con el desarrollo de este proyecto, particularmente por los posibles efectos directos y graves que el proyecto y la construcción de los diques puedan tener sobre sus respectivas comunidades, especialmente so *130 bre la Comunidad Tablonal de Aguada”. (Énfasis suprimido). (20)
Ahora bien, el 21 de marzo de 2012, pocos días antes de que el Tribunal de Apelaciones emitiera su dictamen, este Tribunal resolvió Lozada Sánchez et al. v. JCA, 184 DPR 898 (2012). Debido a ese precedente, el 9 de abril de 2012 los municipios proponentes presentaron una moción de reconsideración ante el Tribunal de Apelaciones y puntualizaron que el recurso de revisión judicial presentado por los recurridos no contenía alegaciones suficientes en derecho para establecer que conforme a la Sección 4.2 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (LPAU), Ley Núm. 170 de 12 de agosto de 1988 (3 LPRA see. 2172), estos eran partes adversamente afectadas por la Resolución de la JCA.(21) Atendida esa moción, el tribunal la declaró no ha lugar.
Inconform.es con esa determinación, los peticionarios presentaron el recurso de de epígrafe y señalan los errores siguientes:
Primer error: Erró el [TA] al concluir [, en contravención a Lozada,] que los recurrentes poseían legitimación activa, bajo la See. 4.2 de la [LPAU,] para instar el recurso de revisión administrativa contra la aprobación por la JCA de la DIA-F para el Proyecto.
Segundo error: Erró el [TA] al no concederle debida deferencia al criterio especializado de la JCA y proceder a sustituir el criterio de dicha agencia con el propio, ausente determinación de que la agencia especializada actuara ilegal, arbitraria o caprichosamente, y a pesar de existir en el record una base racional y evidencia sustancial para explicar y sostener la de-cisión de la JCA, invalidando así, parcialmente, la Resolución R-10-13-6 [...] de la JCA y concluyendo que:
(a.) El análisis de alternativas en la DIA-F es insuficiente y [...] es necesario evaluar “la alternativa de disminuir la exten-sión y capacidad de la marina, para minimizar los impactos a los ecosistemas del lugar”;
(b.) El análisis en la DIA-F de los efectos de la acción pro- *131 puesta sobre la comunidad Tablonal es insuficiente y que es necesario evaluar “la probabilidad de un aumento o agrava-ción del nivel de inundación en la comunidad Tablonal y cómo podría atenderse ese asunto” [.]
(c.) El Plan de Mitigación incluido en la DIA-F es insufi-ciente y [...] es necesario evaluar “las acciones de mitigación de los daños que se causará a los humedales”. Petición de cer-tiorari, pág. 15.
El 26 de octubre de 2012 expedimos el auto solicitado y las partes han presentado sus respectivos alegatos. Con el beneficio de sus comparecencias, pasamos a resolver.
II
Antes de dirimir los méritos del recurso, es preciso aten-der el planteamiento de ausencia de legitimación activa que aducen los peticionarios. Esto se debe hacer aun cuando nadie lo haya cuestionado, ya que los asuntos ju-risdiccionales son materia privilegiada y deben atenderse con preeminencia. García v. Hormigonera Mayagüezana, 172 DPR 1, 7 (2007). En esencia, los peticionarios sostienen que el análisis de legitimación activa que ponderó el Tribunal de Apelaciones ignoró por completo las normas pautadas en Fund. Surfrider y otros v. A.R.Pe., supra, y en Lozada Sánchez et al. v. JCA, supra. Pasemos a exponer el derecho aplicable a este asunto.
A. Cuando una parte impugna una actuación gubernamental, el análisis para determinar si el peticionario es la parte adecuada para entablar la reclamación se realiza en términos de la doctrina de autolimitación judicial conocida como legitimación activa o standing. Mapfre v. ELA, 188 DPR 517 (2013). Esto forma parte de los criterios que se evalúan para determinar si una controversia presentada ante los tribunales es justiciable, lo que significa que “los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas que tienen interés real en obtener un remedio que haya de *132 afectar sus relaciones jurídicas”. E.L.A. v. Aguayo, 80 DPR 552, 558-559 (1958). Este principio de justiciabilidad res-ponde al rol asignado a la Rama Judicial en una distribu-ción tripartita de poderes para asegurar que no actuará en áreas sometidas al criterio de las otras ramas del Gobierno, Lozada Sánchez et al. v. JCA, supra, pág. 917.
Reiteradamente, hemos resuelto que una controversia abstracta, ausente de un perjuicio real y vigente a los derechos de la parte que los reclama, no presenta el caso o la controversia necesaria para que los tribunales puedan intervenir, Lozada Sánchez et al. v. JCA, supra, págs. 916-917; Moreno v. Pres. U.P.R. II, 178 DPR 969, 973 (2010); Lozada Tirado et al. v. Testigos Jehová, 177 DPR 893, 924-925 (2010). Precisamente, el propósito de la doctrina de legitimación activa es que el tribunal se asegure de que en toda acción que se presente ante sí, el reclamante tenga un interés genuino, que va a proseguir su causa de forma vigorosa y que todos los asuntos pertinentes serán colocados ante la consideración del tribunal. P.I.P. v. E.L.A. et al., 186 DPR 1, 11 (2012); Sánchez et al. v. Srio. de Justicia et al., 157 DPR 360, 371 (2002).
De esta forma, se considera que una parte tiene legitimación activa o standing cuando: el demandante o quien promueve ha sufrido un daño claro y palpable; ese daño es inmediato, preciso, no abstracto ni hipotético; existe una relación causal razonable entre la acción que se ejecuta y el daño alegado, y la causa de acción surge al amparo de la Constitución o de alguna ley. Lozada Sánchez et al. v. JCA, supra, pág. 917; Fund. Surfrider y otros v. A.R.Pe., supra, pág. 572; Col. Peritos Elec. v. A.E.E., 150 DPR 327, 331 (2000); Hernández Torres v. Gobernador, 129 DPR 824, 835-836 (1992).
Estos requisitos se analizarán en el contexto de una persona particular como en el de un grupo u organización. En cuanto a esto, hemos expresado que una *133 asociación tiene legitimación para solicitar la intervención judicial por los daños sufridos por la agrupación y vindicar los derechos de la entidad. P.I.P. v. E.L.A. et al., supra, pág. 12; Lozada Sánchez et al. v. JCA, supra, pág. 918; Fund. Surfridery otros v. A.R.Pe., supra, pág. 572; Col. Ópticos de P.R. v. Vani Visual Center, 124 DPR 559, 565 (1989). De esta forma, puede comparecer en defensa de sus intereses, en cuyo caso le corresponde demostrar que la colectividad sufre un daño claro, palpable, real, inmediato, preciso, no abstracto o hipotético. Fund. Surfrider y otros v. A.R.Pe., supra, págs. 572-573; Col. Peritos Elec. v. A.E.E., supra, pág. 331; Col. Ópticos de P.R. v. Vani Visual Center, supra, pág. 565.
Por otra parte, una asociación también puede acudir al foro judicial a vindicar los derechos de uno de sus miembros aunque la organización en sí no haya sufrido daños propios. En este caso, es necesario que: (1) el miembro tenga legitimación activa para demandar a nombre propio; (2) los intereses que se pretendan proteger estén relacionados con los objetivos de la colectividad, y (3) la reclamación y el remedio solicitado no requieran la participación individual de cada miembro. Fund. Surfrider y otros v. A.R.Pe., supra, pág. 573; Col. Peritos Elec. v. A.E.E., supra, págs. 331—332; Col. Ópticos de P.R. v. Vani Visual Center, supra, pág. 566.
En cuanto al requisito del daño que debe sufrir la persona que solicita la intervención judicial, hemos reiterado que se puede basar en consideraciones ambientales, recreativas o espirituales. Fund. Surfrider y otros v. A.R.Pe., supra, pág. 573; Salas Soler v. Srio. de Agricultura, 102 DPR 716, 723 (1974). En el caso de una organización, el mero interés en un asunto no es suficiente de por sí para establecer que una parte fue adversamente afectada por la decisión de una agencia. Fund. Surfrider y otros v. A.R.Pe., supra, pág. 583. Además, las asociaciones vienen obligadas a demostrar esos elementos independientemente de cuán *134 cualificadas estén para evaluar la controversia de que se trate el caso. íd.(22) Ello implica que la “puerta” no “está abierta” para que el tribunal considere todo caso que quiera incoar cualquier ciudadano. Id., pág. 573.
Es importante señalar que los requisitos de legitimación activa discutidos no están aislados del procedimiento administrativo. Si bien es cierto que “las agencias no tienen una limitación de caso o controversia”, el poder de revisión judicial no se puede ejercer en aquellas circunstancias en que se pretende una disputa abstracta cuya solución no tendrá controversias para las partes. Fund. Surfrider y otros v. A.R.Pe., supra, págs. 571, 582. Por lo tanto, es imperativo que el recurrente satisfaga el requisito de legitimación cuando presente un recurso de revisión judicial. Id., pág. 574.(23)
En el contexto de los procedimientos administrativos, sabemos que una parte puede considerarse como agraviada e interesada para participar en los procedimientos ante una agencia pero carecer de legitimación para presentar un recurso de revisión judicial. D. Fernández Quiñones, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed. rev., Bogotá, Ed. Forum, 2001, pág. 500. Recientemente tuvimos la oportunidad de expresarnos en cuanto a esto. En Fund. Surfrider y otros v. A.R.Pe., supra, mencionamos que quien cuestione la actuación de una agencia mediante un recurso de revisión judicial tiene que demostrar que goza de legitimación activa en función de las disposiciones de la See. 4.2 da la LPAU, supra, que preceptúa que una “parte adversamente afectada” por una orden o resolución final de una agencia podrá presentar ese recurso ante el Tribunal de Apelaciones. Al interpretar esa disposición dijimos que quien recurra en *135 revisión debe satisfacer dos requisitos: (1) ser parte, y (2) que la decisión de la agencia le haya afectado adversamente.(24) Íd., págs. 575-576. En cuanto este segundo requerimiento, mencionamos que “no es suficiente que la actuación gubernamental tenga un efecto sobre el litigante, sino que ese efecto tiene que ser adverso o desfavorable a sus intereses”. (Énfasis nuestro). íd., pág. 577. En específico, pautamos que la frase “adversamente afectada” significa que
[...] la parte recurrente tiene un interés sustancial en la con-troversia porque sufre o sufrirá una lesión o daño particular que es causado por la acción administrativa que se impugna mediante el recurso de revisión judicial. El daño tiene que ser claro, específico y no puede ser abstracto, hipotético o especulativo. (Énfasis nuestro). íd., pág. 579.
De otra parte, recientemente resolvimos Lozada Sánchez et al. v. JCA, supra. Allí analizamos si lo resuelto en Fund. Surfrider y otros v. A.R.Pe., supra, se debía extender a los procedimientos administrativos tramitados al amparo de la Ley Núm. 76-2000.(25) Esta es una legislación que permite preterir el cauce administrativo en situaciones de emergencia en las agencias gubernamentales que tienen inherencia en la tramitación de endosos, permisos, consultas o certificaciones. Lozada Sánchez et al. v. JCA, supra, pág. 915. Resolvimos afirmativamente porque, a pesar de que los procedimientos al amparo de esa ley eran más flexibles, la propia ley establecía que no estaban exentos de revisión judicial, y al igual que en la LPAU, se hacía referencia a que era la “parte adversamente afectada” quien podía presentar ese recurso. íd., pág. 915.
Por lo tanto, quien pretenda mover la maquinaria *136 judicial para que el tribunal revise una determinación de una agencia “tiene el peso de probar su legitimación en todas las etapas”. Fund. Surfrider y otros v. A.R.Pe., supra, pág. 585. “Esta legitimación se demuestra mediante la ale-gación de hechos que permitan [al] foro judicial constatar que es parte adversamente afectada por la decisión que se impugna”. (Énfasis nuestro). Íd.
Expuesto el marco jurídico que precede, pasemos a exa-minar el primer error señalado por los peticionarios.
III
Arguyen los municipios proponentes que los recurridos no tenían legitimación activa para presentar el recurso de revisión judicial ante el Tribunal de Apelaciones. Sostienen que ese foro ignoró la norma de Lozada Sánchez et al. v. JCA, supra, y la de Fund. Surfrider y otros v. A.R.Pe., supra. En ese sentido, plantean que el Tribunal de Apelaciones no tuvo ante sí alegaciones suficientes para concluir conforme a esos precedentes que los recurridos, tanto en su carácter personal como en representación de CAPCA, te-nían legitimación activa. (26)
Ahora bien, los recurridos nos invitan a que determine-mos que en los casos en que se evalúan documentos ambientales no aplican los requisitos establecidos en Fund. Surfridery otros v. A.R.Pe., supra, en cuanto a la legitima-ción activa que deben demostrar las partes al presentar un recurso de revisión judicial.(27) Apuntan que el presente caso es distinguible del precitado porque se origina en un procedimiento informal de evaluación de documentos am-bientales al que no le aplican las disposiciones de la LPAU referentes a los procedimientos adjudicativos.(28) Examinemos estos particulares.
*137 A. Cuando por disposición de ley o reglamento una agencia deba adjudicar formalmente una controversia, los procedimientos se deberán regir por la Sec. 3.1 de la LPAU, 3 LPRA sec. 2151. En esa ley se define “adjudicación” como el pronunciamiento mediante el cual una agencia determina derechos, obligaciones o privilegios que correspondan a una parte. 3 LPRA sec. 2102(b). Véase, también, Depto. Educ. v. Sindicato Puertorriqueño, 168 DPR 527 (2006). La esencia de los procedimientos adjudicativos formales consiste en evaluar y decidir una controversia fáctica aplicando a los hechos específicos del caso las normas y el derecho vigente. Torres Ramos v. Policía de P.R., 143 DPR 783, 794 (1997).
En este tipo de procedimiento se deberán salvaguardar los derechos siguientes: (1) una notificación oportuna de los cargos, querellas o reclamos en contra de una parte; (2) presentar evidencia; (3) una adjudicación imparcial, y (4) que la decisión se fundamente en el expediente. 3 LPRA see. 2151. Además, mediante reglamentación, las agencias pueden conceder estas garantías procesales adicionales en procedimientos que no necesariamente sean formales. Marrero Caratini v. Rodríguez Rodríguez, 138 DPR 215, 224 (1995).
Ahora bien, el caso ante nuestra consideración tiene su origen en un procedimiento informal de evaluación de documentos ambientales. Conforme a la precitada Sec. 3.1 de la LPAU, se considerarán procedimientos informales no cuasijudiciales que no estarán sujetos a las disposiciones de esa ley referentes a los procedimientos adjudicativos
[...] todos los trámites o etapas del proceso de evaluación de documentos ambientales requeridos por la [...] “Ley Sobre Política Pública Ambiental” y el reglamento aprobado al amparo de ésta. En ninguno de estos procedimientos o las etapas en que éstos se dividan, se requerirá a la agencia que fundamente sus resoluciones con determinaciones de hecho y conclusiones de derecho. El procedimiento administrativo para el *138 trámite de documentos ambientales se regirá exclusivamente por la reglamentación adoptada por la Junta de Calidad Ambiental para estos fines. La reconsideración de las decisiones emitidas en todos estos casos se regirán por lo dispuesto en la see. 2165 de este título [...] 3 LPRAsec. 2151(a)(2).(29)
Como vemos, la LPAU establece específicamente que el trámite de evaluación de documentos ambientales es un procedimiento informal y lo supedita a la reglamentación que a esos efectos promulgue la JCA.
B. En Puerto Rico, la protección del ambiente tiene rango constitucional. La Sec. 19 del Art. VI de nuestra Constitución preceptúa que “[s]erá política pública del Estado Libre Asociado de Puerto Rico la más eficaz conservación de sus recursos naturales, así como el mayor desarrollo y aprovechamiento de los mismos para el beneficio general de la comunidad [...]”.(30)
Cónsono con ese mandato constitucional, la Asamblea Legislativa aprobó la anterior Ley Núm. 9 de 18 de junio de 1970, Ley de Política Pública Ambiental, que constituyó el primer esquema estatutario adoptado en Puerto Rico para atender los asuntos relacionados a la administración del medio ambiente. Véase Misión Ind. P.R. v. J.C.A., 145 DPR 908 (1998). Esta ley fue derogada por la actual Ley Núm. 416-2004, supra, que establece la política pública del Gobierno de Puerto Rico respecto al impacto de las activi- *139 dades del hombre en todos los componentes del medio am-biente natural.
Reconociendo la importancia y relación entre los facto-res sociales, económicos y ambientales, la Asamblea Legislativa estableció que como parte de su política pública, el Gobierno de Puerto Rico debe procurar un desarrollo sus-tentable basándose en: (1) la más efectiva protección del ambiente y los recursos naturales; (2) el uso más prudente y eficiente de los recursos naturales para beneficio de toda la ciudadanía; (3) un progreso social que reconozca las ne-cesidades de todos, y (4) el logro y mantenimiento de altos y estables niveles de crecimiento económico y empleos. Art. 3 de la Ley Núm. 416-2004, supra (12 LPRA see. 8001). Ante ello, esta ley estableció que todos los departamentos, agencias, municipios, corporaciones e instrumentalidades públicas de Puerto Rico deben
[i]ncluir en toda recomendación o informe sobre una propuesta de legislación y emitir, antes de efectuar cualquier acción o promulgar cualquier decisión gubernamental que afecte signi-ficativamente la calidad del medio ambiente, una declaración escrita y detallada sobre:
(A) El impacto ambiental de la legislación propuesta, de la acción a efectuarse o de la decisión a promulgarse;
(B) cualesquiera efectos adversos al medio ambiente que no podrán evitarse si se aprobase y aplicase la propuesta legisla-ción, si se efectuase la acción o promulgase la decisión guber-namental de que se trate;
(C) alternativas a la legislación propuesta, o a la acción o decisión gubernamental en cuestión;
(D) la relación entre usos locales a corto plazo del medio ambiente y la conservación y mejoramiento de la productivi-dad a largo plazo, y
(E) cualquier compromiso irrevocable o irreparable de los recursos naturales que estarían envueltos en la legislación propuesta, si la misma se [implantase]; en la acción gubernamental, si se efectuase; o en la decisión, si se promulgase. Art. 4 de la Ley Núm. 416-2004, supra, 12 LPRA sec. 8001a(b)(3).
Esa declaración de impacto ambiental es un instru-mento de planificación que se solicita para asegurar que la conservación y el uso racional del medio ambiente se con- *140 sideren cuando se tomen decisiones gubernamentales so-bre una propuesta que pueda tener un impacto en el medio ambiente. Misión Ind. P.R. v. J.C.A., supra. No constituye un permiso, pues es “la primera etapa de un largo camino de autorizaciones oficiales en el desarrollo de un proyecto”, íd. Con el propósito de regular el proceso de presentación, evaluación y trámite de esos documentos, la JCA promulgó el Reglamento Núm. 6510, supra. Allí, estableció que esos trámites serían informales, no contenciosos, y que sus con-clusiones no conllevarían determinaciones adjudicativas, esto en consonancia con la Sec. 3.1 de la LPAU, supra. En ese sentido, la JCA evalúa los documentos ambientales de manera fiscalizadora, conduciendo un trámite investigativo que incluye la obtención de comentarios y recomenda-ciones de agencias gubernamentales y del público en general para determinar si son adecuados.(31)
Por su parte, el Art. 12(a) de la Ley Núm. 416-2004, supra (12 LPRA sec. 8002f) establece que la JCA podrá celebrar vistas con relación a cualquiera de los asuntos relacionados con la implantación de esa ley, lo que incluye la evaluación de una DIA. El mencionado Reglamento Núm. 6510 dispuso que las vistas que se celebraran a esos efectos serían “investigativas informales”.(32) Por ello, la comparecencia del público a estas no es en calidad de parte, según las definen en la LPAU(33) y en los regla- *141 mentos de la agencia. (34) Tampoco procedería el mecanismo de intervención. (35)
Ahora bien, ese trámite informal está sujeto a revisión judicial. Al respecto, el Art. 12(a)(4) de la Ley Núm. 416-2004, supra, dispuso que
[c\ualquier persona adversamente afectada por una resolución, orden o decisión de la Junta de Gobierno podrá solicitar de ésta la reconsideración de su determinación o solicitar su revisión por el Tribunal de Apelaciones de Puerto Rico de conformidad a las disposiciones de la “Ley de Procedimiento Administrativo Uniforme [...]”. 12 LPRA sec. 8002f(a)(4).
De manera que la propia Ley de Política Pública Am-biental nos remite a la LPAU para propósitos de cómo se llevará a cabo la revisión de sus determinaciones. Esto es cónsono con la See. 4.2 de la LPAU, 3 LPRA see. 2172, que señala que la revisión judicial allí dispuesta será “el recurso exclusivo para revisar los méritos de una decisión administrativa sea ésta de naturaleza adjudicativa o de naturaleza informal emitida al amparo de [la Ley de Procedimiento Administrativo Uniforme]”. (Enfasis nuestro).
C. De lo antes discutido, aparentemente existe una discrepancia entre lo dispuesto en la LPAU respecto a los requisitos para presentar un recurso de revisión judicial y lo referente a la naturaleza informal, no adjudicativa ni contenciosa del procedimiento de evaluación de documen-tos ambientales. Como adelantamos, los recurridos nos plantean que como en este tipo de procedimientos no inter-vienen “partes”, según estas se definen en la LPAU, no se *142 les debe aplicar la doctrina establecida en Fund. Surfrider y otros v. A.R.Pe., supra.(36) No les asiste la razón. Veamos.
En la faena de interpretar las leyes es nuestra obliga-ción “armonizar, siempre que sea posible, todos aquellos estatutos involucrados en la solución de la controversia, de modo que se obtenga un resultado sensato, lógico y razonable” que represente y salvaguarde la efectividad de la intención legislativa. IFCO Recycling v. Aut. Desp. Sólidos, 184 DPR 712, 741 (2012). Debemos interpretar la ley “como un ente armónico, dándole sentido lógico a sus dife-rentes secciones, supliendo las posibles deficiencias cuando esto fuera necesario”. Departamento Hacienda v. Telefónica, 164 DPR 195, 204 (2005). Véanse, también: Farmacias Moscoso, Inc. v. K-mart Corp., 138 DPR 497, 502 (1995); Gobernador v. Alcalde de Coamo, 131 DPR 614, 621 (1992).
En el caso que nos ocupa, independientemente de que los procedimientos administrativos relacionados con una DIA sean informales y no se incluya la participación de “partes”, la propia Ley Núm. 416-2004, supra, nos dirige a la Sec. 4.2 de la LPAU para que rija el proceso de revisión judicial. Además, esta ley consigna que cualquier persona adversamente afectada por una decisión de la JCA podrá presentar un recurso de revisión judicial conforme a las disposiciones de la LPAU. Es decir, a pesar de que el legislador entendió que la evaluación de documentos ambientales es de naturaleza informal y no contenciosa, quien solicite la revisión de una Resolución Final de la JCA en la que se aprueba una DIA, debe hacerlo conforme a las disposiciones de la LPAU que regulan ese recurso. Por el he- *143 cho de que en la evaluación de documentos ambientales no participan “partes”, según estas se definen para propósitos de un procedimiento adjudicativo formal, no podemos in-terpretar que en estos los requisitos de legitimación activa operan de manera diferente. Y es que no puede ser de otra forma, pues la propia LPAU preceptúa que el recurso de revisión judicial que dispone ese estatuto será el único mecanismo para solicitar que el tribunal revise una determinación de una agencia, tenga esta su origen en un procedimiento formal o informal.
Por lo tanto, lo resuelto en Fund. Surfrider y otros v. A.R.Pe., supra, le aplica a los recurridos. Pues tal como mencionamos en hozada Sánchez et al. v. JCA, supra, pág. 916, “[r]esolver de otra forma sería burlar el principio de justiciabilidad que ha permeado por décadas [en] nuestro ordenamiento jurídico. [...] Dicho de otro modo, sería abrir la puerta para que el Tribunal de Apelaciones emita opi-niones consultivas sin que exista una controversia viva y latente”. Y como nos ilustra el Prof. Demetrio Fernández, es necesario distinguir que cuando se presenta un recurso de revisión judicial, se trata de una situación distinta a la que se da en la agencia ya que se recurre al tribunal. Fernández, op. cit., pág. 500. En cuanto a esto debe recordarse que “[l]a presencia de una controversia justiciable es lo que activa el poder judicial”. Fund. Arqueológica v. Depto. de la Vivienda, 109 DPR 387, 392 (1980). De lo contrario, el tribunal no tendrá jurisdicción para intervenir.
Resuelto este asunto, evaluemos si los recurridos logra-ron demostrar mediante sus alegaciones que poseen legiti-mación activa.
D. Ciertamente, cuando se cuestiona la legitimación activa de un litigante, se debe asumir que las alegaciones incluidas en su recurso son ciertas y se debe evaluar la causa de acción de la manera más favorable para el demandante. Crespo v. Cintrón, 159 DPR 290, 299 (2003). Ahora bien, aun al hacer ese ejercicio en este caso, concluí- *144 mos que los recurridos no tienen legitimación activa. Exa-minemos sus alegaciones. Veamos.
En su recurso de revisión, los recurridos hicieron refe-rencia a una ponencia que el Sr. Gil A. Morales Méndez y la Sra. Ramonita Méndez presentaron ante la JCA. Seña-lan que allí “presentaron sus serias preocupaciones en re-lación a la construcción de los diques del proyecto, el efecto en los problemas serios de inundabilidad, de seguridad de propiedad y de vida en su lugar de residencia, la Comuni-dad Tablonal en Aguada y los cambios geotécnicos recien-tes en el lugar donde se pretende construir el proyecto y los diques”.(37) Asimismo, se menciona que el Sr. Jorge R. Se-pulveda Torres sometió otro escrito similar relacionados a esos asuntos.(38) En cuanto a estas ponencias, basta señalar que se refieren a la DIA-R Esta es el documento ambiental que presenta una agencia proponente para consultar y obtener los comentarios de otras agencias y del público en cuanto a la acción propuesta.(39) Por su parte, la DIA-F es el documento en el que se discuten esos comentarios y se exponen las modificaciones aplicables.(40) La revisión judicial que se presentó en este caso versa sobre la resolución de la JCA mediante la que se aprobó una DIA-F. Por lo tanto, los recurridos tenían que establecer en qué manera particular les afectaba la aprobación de la DIA-F, teniendo presente lo que constituye ese documento. Al ser así, se deduce que las ponencias referentes a la DIA-P no aportan a establecer cómo la resolución recurrida, que trata sobre una DIA-F, les afecta adversamente.
Por otra parte, esbozaron que se “afecta directamente la seguridad de las comunidades en la zona”(41) y que “[e]l *145 proyecto de canalización propuesto aumenta el nivel de inundación del área [...]”.(42) También, apuntan que la DIA-F no discute adecuadamente los impactos de canaliza-ción de los cuerpos de agua del área y que esto podría afectar directamente la seguridad de la comunidad Tablonal.(43) Además, sostuvieron que la acción propuesta impactará significativamente los humedales del área cercana al proyecto, el estuario del Caño Madre Vieja, varias especies en peligro de extinción y terrenos de la Reserva .Agrícola del Valle del Coloso.(44)
En Fund. Surfrider y otros v. A.R.Pe., supra, evaluamos unas alegaciones similares a las del caso de autos. Por su pertinencia, pasamos a citar “in extenso” lo que allí expresamos:
El hecho de ser vecino, sin más, no le confiere legitimación a quien impugne una determinación de una agencia, ya sea en casos de permisos de construcción o en casos de zonificación y planificación. Siempre es imprescindible que el recurrente sa-tisfaga el requisito de daño y la relación causal de esa lesión con la actuación administrativa.
Según la norma aplicable, el señor Richter no logró demos-trar que se verá adversamente afectado por la determinación administrativa. [E]l señor Richter escuetamente alegó lo si-guiente: (1) que reside “en el barrio Ensenada de Rincón, cerca del proyecto objeto del caso de autos”, (2) que actualmente está afectado por un problema de distribución de agua, (3) que “en-tiende que este problema se agravará con el aumento de con-sumo que significa este proyecto”, (4) “que sus intereses se verán afectados porque este tipo de desarrollo aumenta la densidad poblacional y por lo tanto rompe la armonía y altera las características de su vecindario”. [...] Tanto en los foros judiciales como en las comparecencias en el procedimiento ad-ministrativo, el señor Richter escuetamente alegó que es “ve-cino” del proyecto, pero no indicó dónde reside. Lo único que aparece en la hoja de notificación del recurso ante nuestra consideración es un apartado postal. No se alegó en el recurso la dirección residencial del copeticionario y cuán próxima está *146 la alegada residencia al proyecto en cuestión. De hecho, en todas las comparecencias ante la agencia y ante los foros judi-ciales, se establece dónde se ubicará el proyecto en el Barrio Ensenada. Sin embargo, no hay dato alguno sobre dónde reside Richter ni cuán próxima está su residencia del proyecto en cuestión.
Era necesario que el copeticionario estableciera la proximi-dad de su residencia con relación al proyecto, ya que los intereses que alega que se verán afectados por la decisión administrativa dependen de ese hecho. La distancia entre la residencia de Richter y el proyecto es un elemento clave [...] El hecho de que el copeticionario viva en el Barrio Ensenada no significa que resida en el mismo vecindario en dónde estará ubicado el proyecto, pues un barrio puede ser tan extenso que contenga varios vecindarios. De hecho, ni siquiera se alegó que el peticionario reside en el mismo vecindario dónde se desarro-llaría el proyecto. (Enfasis suplido). Fund. Surfrider y otros v. A.R.Pe., supra, págs. 587-588.
En la DIA-F se describe que el proyecto en controversia se desarrollará en un predio ubicado entre la Comunidad Espinar de Aguada, las Urbanizaciones García y Victoria, y el Residencial Público Aponte de Aguadilla. No se men-ciona allí la comunidad Tablonal, donde los recurridos ale-gan que residen. En su escrito, estos tampoco nos indican la cercanía de su comunidad en cuanto al lugar donde ubi-cará el proyecto. Por lo tanto, conforme al precedente esta-blecido, sus alegaciones son insuficientes para establecer que tienen legitimación activa.
De otra parte, los recurridos alegan daños que no son particularizados, pues se refieren a la comunidad en general. Así, por ejemplo, estos mencionan el alegado efecto negativo que tiene la aprobación de la DIA-F en los humedales, las especies en peligro de extinción y el estua-rio del Caño Madre Vieja. Empero, no mencionan qué daño específico es el que sufrirán ellos en particular. “Aun en los casos derivados de precepto constitucional o estatuto el de-mandante debe alegar que ha sufrido un ‘claro y palpable daño, no importando que el tipo de daño esté compartido por una extensa clase de otros posibles litigantes’ ”. Fund. *147 Arqueológica v. Depto. de la Vivienda, supra, pág. 391.(45) Las alegaciones no nos ponen en posición de adjudicar cuáles son los daños precisos que cada uno de los recurridos sufre por la aprobación de la DIA-F.
En cuanto a CAPCA, basta señalar que no menciona en sus escritos los daños que la aprobación de la DIA-F le causa a esa colectividad, por lo que no tiene legitimación activa en ese aspecto. De otra parte, ya resolvimos que los recurridos no tienen legitimación activa, por lo que tam-poco CAPCA tendría legitimación para comparecer a nom-bre de estos.
IV
Por lo antes expuesto, se revoca la sentencia del Tribunal de Apelaciones por cuanto los recurridos no tenían le-gitimación activa para presentar ese recurso. Resolvemos que quien solicite la revisión de una resolución que aprobó una DIA-F, tiene la obligación de acreditar su legitimación activa mediante alegaciones suficientes conforme a la norma pautada en Fund. Surfrider y otros v. A.R.Pe., supra.

Se dictará sentencia de conformidad.

La Jueza Asociada Señora Fiol Matta disintió mediante una opinión escrita, a la cual se unieron el Juez Presidente Señor Hernández Denton y la Juez Asociada Señora Rodrí-guez Rodríguez. El Juez Asociado Señor Estrella Martínez disintió mediante las expresiones siguientes:
El Juez Asociado Señor Estrella Martínez disiente de lo que ha resuelto este Tribunal por considerar que aún bajo los criterios adoptados en Fund. Surfrider y otros v. A.R.Pe., 178 DPR 563 (2010), y Lozada Sánchez et al. v. JCA, 184 DPR 898 (2012), los daños alegados son lo suficientemente específicos para determinar que los recurridos poseen legitimación activa. *148 Desde el inicio de la controversia, los recurridos hicieron seña-lamientos específicos ante el foro administrativo. Específica-mente, identificaron la problemática de inundaciones en el sector Tablonal y no fundamentaron en cuestiones hipotéticas la posibilidad de que estas incrementaran, ya que señalaron, expresamente, que el diseño de los diques propuestos no se ajusta al aprobado por el Cuerpo de Ingenieros del Ejército de Estados Unidos. La participación de los recurridos y las agen-cias en las vistas públicas fue tan efectiva que la Junta de Calidad Ambiental (JCA) determinó, mediante Resolución, que los proponentes debían atender ciertas recomendaciones. Una vez aprobada la Declaración de Impacto Ambiental Final (DIA-F), los recurridos hicieron nuevamente señalamientos específicos y suficientes. Del expediente se deduce que los recurridos cuestionaron que la DIA-F no cumplió con las reco-mendaciones emitidas por la JCA en su Resolución. Incluso, detallaron minuciosamente los vicios que adolecía la DIA-F relacionadas al cumplimiento de la legislación y reglamentación que regula desarrollos cuando existen humedales, acuíferos y especies en peligro de extinción.
El Tribunal de Apelaciones identificó correctamente que la DIA-F no consideró ni mucho menos discutió la viabilidad de diseñar un proyecto alternativo que no impacte tan agresiva-mente el medio ambiente del área, requisito que impone el Reglamento de la Junta de Calidad Ambiental para la Presen-tación, Evaluación y Trámite de Documentos Ambientales, Re-glamento Núm. 6510 de 22 de agosto de 2002. El foro interme-dio determinó, además, que la DIA-F no evaluó adecuada-mente el impacto que el proyecto propuesto tendría sobre los humedales del área y catalogó como insuficientes las medidas de mitigación. También señaló que la DIA-F no discutió el im-pacto de la canalización de las aguas sobre la comunidad de Tablonal, que se encuentra adyacente al Río Culebrinas, uno de los cuerpos de agua que serán impactados por el desarrollo del proyecto. Acertadamente, el Tribunal de Apelaciones or-denó a los peticionarios atemperar la DIA-F a las observacio-nes contenidas en la Sentencia.
De acuerdo con lo discutido anteriormente, resulta incues-tionable la legitimación activa de los recurridos. No nos encon-tramos ante asuntos abstractos e hipotéticos. Una mayoría de este Tribunal no debió pasar por alto la realidad de los daños específicos a los que se exponen los recurridos y la relación directa entre las alegaciones, los cuestionamientos y señala-mientos de estos, y las acciones que la JCA y el Tribunal de Apelaciones le han requerido a los peticionarios en diversas etapas.

 Véase Descripción del Proyecto, Declaración de Impacto Ambiental Final, Apéndice de la Petición de certiorari, pág. 268.

 Íd.

 Íd.

 Apéndice de la Petición de certiorari, pág. 238.

 Íd., pág. 243.

 Este era el Reglamento vigente a la fecha en que se presentó la Declaración de Impacto Ambiental de este caso y se había promulgado al amparo de la hoy derogada Ley Núm. 9 de 18 de junio de 1970 (12 LPRA ant. sec. 1121). Posteriormente, el Reglamento Núm. 7948 de 30 de noviembre de 2010 lo derogó.

 Apéndice de la Petición de certiorari, pág. 244.

 Véase Informe del Panel Examinador. íd., pág. 1253. También, se recibieron los comentarios de las agencias estatales y federales siguientes: Autoridad de Ener-gía Eléctrica, Autoridad de Acueductos y Alcantarillados, Autoridad de Carreteras y Transportación, Autoridad de Desperdicios Sólidos, Autoridad de Tierras, Compañía de Turismo, Departamento de Recursos Naturales y Ambientales, Cuerpo de Inge-nieros del Ejército de Estados Unidos, Servicio Federal de Pesca y Vida Silvestre, Instituto de Cultura Puertorriqueña y la Junta de Planificación.

 Apéndice de la Petición de certiorari, pág. 251.

 Íd., pág. 260.

 Íd., pág. 1078.

 Véase Resolución y Notificación Final Núm. R-10-13-6, íd., pág. 1089.

 Apéndice de la Petición de certiorari, pág. 1097.

 Apéndice del recurso de revisión judicial KLRA 2010-01026, pág. 132, Apéndice de la Petición de certiorari, págs. 1164-1169.

 El 13 de diciembre de 2010, el proponente privado del proyecto, Cordeco Land Services, solicitó al Tribunal de Apelaciones comparecer como parte interventora. El tribunal denegó esa petición. Apéndice de la Petición de certiorari, págs. 1363-1372.

 Apéndice de la Petición de certiorari, págs. 1377 y 1442.

 Se referían a la sentencia emitida en el recurso KLBA2010-0926, Melecón Warehouse, Inc. v. J.C.A. En ese caso se determinó que la parte recurrente no tenía legitimación para presentar el recurso de revisión judicial ya que no había sido parte interventora en los procedimientos que se llevaron ante la agencia. Véase Moción Informativa, Apéndice de la Petición de certiorari, pág. 1428.

 En específico, se le ordenó que ampliaran la evaluación de: (1) la alternativa de disminuir la extensión y capacidad de la marina para minimizar los impactos a los ecosistemas del lugar; (2) la posibilidad de un aumento o agravamiento del nivel de inundación en la Comunidad Tablonal, y (3) las acciones de mitigación de los daños que se causará a los humedales. Apéndice de la Petición de certiorari, pág. 80.

 Íd., págs. 17-18.

 Íd., pág. 18.

 Íd., pág. 1462.

 Citando a Sierra Club v. Morton, 405 US 727, 739 (1972).

 Citando a D. Fernández Quiñones, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed. rev., Bogotá, Ed. Forum, 2001, pág. 500.

 Es “parte” para propósitos de la revisión judicial: el promovido o el promo-vente, y las personas naturales o jurídicas que previa solicitud formal al efecto, mediante el mecanismo de intervención, la agencia las hizo partes. Véase JP, Plaza Santa Isabel v. Cordero Badillo, 177 DPR 177 (2009).

 3 LPRA sec. 1931 et seq.

 Alegato de la parte peticionaria, pág. 20.

 Alegato de las partes recurridas, pág. 21.

 Íd.

 Esta disposición de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (LPAU), que se refiere a la informalidad de los procedimientos de evaluación de documentos ambientales, se estableció mediante la Ley Núm. 323 de 6 de noviembre de 1999. Esta, a su vez, se promulgó con el propó-sito de aclarar que los trámites de documentos ambientales establecidos en el Art. 4(c) de la Ley Núm. 9 de 18 de junio de 1970, hoy derogada, se considerarían proce-dimientos administrativos informales e investigativos, sin función ni característica adjudicativa. Específicamente, se mencionó que era necesario enmendar la LPAU “para dejar claro categóricamente y sin duda alguna que la aprobación de los documentos ambientales NO es un proceso adjudicativo, sino informativo, que no necesita incluir ‘determinaciones de hecho y conclusiones de derecho’ para considerarse completado”. Véase Exposición de Motivos de la Ley Núm. 323-1999 (1999 Leyes de Puerto Rico 1450).

 Art. VI, Sec. 19, Const. ELA, LPRA, Tomo 1, ed. 2008, pág. 440.

 Regla 202(C) del Reglamento Núm. 6510 de 22 de agosto de 2002.

 Íd., Regla 270(B).

 “Parte-Significa toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, o que se le permita intervenir o participar en la misma, o que haya radicado una petición para la revisión o cumplimiento de una orden, o que sea designada como parte en dicho procedimiento”. 3 LPRA sec. 2102(j). En cuanto a la interpretación de esta disposición, véase JP, Plaza Santa Isabel v. Cordero Badillo, supra.

 Regla 26.6 de Procedimiento de Vistas Administrativas de la Junta de Calidad Ambiental de Puerto Rico, Reglamento Núm. 3672, según enmendado por el Reglamento Enmiendas Regla 26 de 20 de marzo de 2000.

 Íd., Regla 26.7.

 En Lozada Sánchez et al. v. JCA, 184 DPR 898 (2012), también se solicitó la revisión de una decisión de la Junta de Calidad Ambiental que aprobó una Declaración de Impacto Ambiental Final. No obstante, en ese caso no se cuestionó si los allí recurrentes eran partes para fines del procedimiento administrativo, por lo que nos concentramos en resolver si estos fueron afectados adversamente por la decisión de la agencia de auscultar si poseían legitimación activa para presentar el recurso de revisión judicial.

 Véase Escrito de revisión judicial, Apéndice de la Petición de certiorari, pág. 1183.

 Íd.

 Regla 203 del Reglamento Núm. 6510, supra.

 Íd.

 Apéndice de la Petición de certiorari, pág. 1199.

 Íd., pág. 1200.

 Íd., pág. 1202.

 Íd., págs. 1210, 1218-1220 y 1224.

 Citando a Warth v. Seldin, 422 US 490, 498 y 501 (1975).